B.W., as Guardian Ad Litem of L.W., a minor, Plaintiff and Appellant,

v.

MEADE COUNTY; Jamie Davis; Alan Sheffield; and an Unknown Law Enforcement Officer, Defendants and Appellees.

No. 18941.

Supreme Court of South Dakota.

Considered on Briefs April 25, 1995.

Decided July 19, 1995.

Rehearing Denied Aug. 18, 1995.

Jon J. LaFleur of LaFleur, LaFleur & LaFleur, Rapid City, for plaintiff and appellant.

John Stanton Dorsey of Whiting, Hagg & Hagg, Rapid City, for appellees County and Davis.

Eric N. Rasmussen of Helsper & Rasmussen, Brookings, for appellee Sheffield.

KONENKAMP, Justice.

A child, through her mother as guardian ad litem, sought damages from public officers and Meade County for negligent investigation of sexual abuse. Declaring them immune from civil liability under state law, the trial court granted summary judgment for the defendants. We affirm.

## FACTS

B.W. (mother) witnessed her daughter, L.W., engaging in apparent sexual behavior while bathing. When the mother asked if anyone had touched her private parts, the child named the landlord's mother. On January 3, 1991, the mother took her child to meet with Meade County Deputy Sheriff Ja-

mie Davis, social worker Alan Sheffield of the South Dakota Department of Social Services (DSS), and another unidentified law enforcement officer. During the interview Davis was in uniform and wore a sidearm. Davis and Sheffield talked to L.W. using the "Red Flag–Green Flag" book which assists investigators in determining whether a child can discern "good" from "bad" touches. Although she was only three years old, L.W. appeared to discriminate truth from falsity. L.W. repeatedly denied suffering any touches that could be deciphered as sexual abuse. The investigators then briefly interviewed the mother, but no one else. Because they observed no signs of abuse the investigators decided to forego requesting a medical examination. Sheffield and Davis told the mother they found no indication L.W. had been sexually abused.

Over the next few months several sexually abusive incidents occurred between L.W. and her father. He was subsequently arrested and convicted for these acts. The landlord's mother was never implicated. In November 1991 medical personnel identified a venereal wart on L.W.'s upper lip. Although this wart had not been pointed out to Sheffield and Davis, the mother asserts it was present during the January interview and the investigators should have spotted it and had it medically examined. She also alleges a medical exam should have been routinely arranged in any event and the investigation was incomplete and careless. Sex abuse at the hands of the father, the mother contends, could have been averted if Davis and Sheffield had not acted negligently. Citing statutory immunity and failure to prove negligence as a matter of law, the trial court granted summary judgment in favor of Davis, Sheffield, and Meade County. The mother appeals. As statutory immunity disposes of this case, we need not address the trial court's ruling on negligence.

## DECISION

### Standard of Review

■ Our review of summary judgment is well established:

[W]e must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Waddell v. Dewey County Bank,* 471 N.W.2d 591 (S.D.1991); *Wilson v. Great N. Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968). We review the factual underpinnings in a light favorable to the nonmovant, but the decisive issue here is a matter of law, not fact.

### Statutory Immunity

■ In reporting or investigating child abuse, immunity from liability is governed by SDCL 26–8A–14 which provides in pertinent part:

Any person or party participating in good faith in the making of a report ... pursuant to §§ 26–8A–3 to 26–8A–8, inclusive, or pursuant to any other provisions of this chapter, is immune from any liability, civil or criminal, that might otherwise be incurred or imposed ... *Immunity also extends in the same manner ... to public officials or employees involved in the investigation and treatment of child abuse or neglect....* (Emphasis added.)

The mother cites authority from three jurisdictions which decline to extend immunity under their statutes to public officials and employees who neglect "to carry out the mandates of statutory provisions." *Brodie v. Summit County Children Serv. Bd.,* 51 Ohio St.3d 112, 554 N.E.2d 1301 (1990); *Gonzalez v. Avalos,* 866 S.W.2d 346 (Tex.App.1993); *Coleman v. Cooper,* 89 N.C.App. 188, 366 S.E.2d 2 (1988). These cases are distinguishable: Their respective state statutes do not immunize negligent child abuse investiga-

tions. Our immunity law, however, specifically covers "public officials or employees involved in the investigation ... of child abuse...." *Cf. Lux by Lux v. Hansen,* 886 F.2d 1064 (8th Cir.1989) (recognizing the "plain language of the statute ... indicates that it applies not only to reporting suspected child abuse, but also to any person who in good faith cooperates with DSS in an investigation."). In *Lux* a mental health counselor involved with a child abuse investigation was adjudged immune from civil tort liability under the plain meaning of the predecessor to SDCL 26–8A–14. We see no room for an alternate interpretation in our present statute.

■ When the language of a statute is clear, certain, and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute.

*Petition of Famous Brands, Inc.,* 347 N.W.2d 882, 885 (S.D.1984) (citing *Matter of Aiken,* 296 N.W.2d 538, 540 (S.D.1980); *Matter of SDDS, Inc.,* 472 N.W.2d 502, 507 (S.D. 1991) (the construction of a statute is a question of law and is fully reviewable by the Court). As public officials and employees involved in the investigation and treatment of child abuse and neglect are covered by our immunity statute, the only question remaining is whether Davis and Sheffield acted in good faith.

■ Viewing the facts most favorable to the mother's case, both investigators violated the DSS Procedure Manual which recommends that in cases of alleged sexual abuse the interviewer be of the same gender as the child to make the interview less traumatic. Davis also violated the manual requiring that "no law enforcement officer should perform an interview while in uniform and wearing a side arm." The investigators felt it unnecessary to subject L.W. to the "trauma" of a medical examination, probably an unsound decision viewed in hindsight. Perhaps a medical exam could have confirmed sexual abuse. Neither investigator noticed the wart on L.W.'s mouth. The mother does not claim she pointed out the wart to the investigators or that they deliberately ignored it. She argues child sex abuse investigators should be able to identify venereal warts or know enough to ask for medical confirmation of suspicious lesions. Furthermore, the mother points out, the investigators too quickly dismissed her description of her child's sexualized behavior. These facts may arguably amount to negligence, but can they also manifest lack of good faith?

The mother contends that by definition a negligent investigation is not a good faith investigation. We have not had occasion to compare these two concepts. In suits involving child abuse reporting, however, other states have interpreted good faith in their immunity statutes to mean more than mere negligent conduct. *See, e.g., Elmore v. Van Horn,* 844 P.2d 1078 (Wyo.1992) (granting immunity for negligence, but not for deliberately false accusations); *Gross v. Haight,* 496 So.2d 1225 (La.App.1986) (immunizing a good faith "error in judgment"); *Awkerman v. Tri–County Orthopedic Group,* 143 Mich. App. 722, 373 N.W.2d 204 (1985) (good faith immunity covers negligence; mere allegation of negligence inadequate as a matter of law to overcome good faith immunity; to overcome immunity there must be improper motive); *Gross v. Myers,* 229 Mont. 509, 748 P.2d 459 (1987) (granting immunity unless malicious purpose); *Davis v. Durham City Schools,* 91 N.C.App. 520, 372 S.E.2d 318 (1988) (no recovery absent showing of malice); *Maples v. Siddiqui,* 450 N.W.2d 529 (Iowa 1990) (negligence will not negate good faith):

[W]hen the legislature undertakes to grant immunity from civil liability, we must assume that this is intended to apply to those situations where liability would otherwise exist because of some negligent act or other breach of legal duty.

*Maples,* 450 N.W.2d at 530.

■ Immunity is critical to South Dakota's evident public policy of protecting the reporting and investigation of child abuse without fear of reprisal, so we endeavor here to arrive at a clear cut standard for defining good faith. In this regard, an Iowa Supreme Court decision interpreting its similar immunity law is helpful. Iowa law grants immunity from civil and criminal liability to persons

"participating in good faith in the making of a report ... or aiding and assisting in an investigation of a child abuse report...." *Garvis v. Scholten*, 492 N.W.2d 402, 403 (Iowa 1992). In that case the court noted:

> [a]s good faith means only honesty in fact, negligence ordinarily has no significance. That is, the honesty in fact that constitutes good faith merely requires honesty of intent and it is not necessary to show that the person was diligent or non-negligent....

*Id.* at 404.

Within the bounds of our statute, negligence and lack of good faith are not equivalent. Simply put, if good faith immunity can be overcome by establishing negligence, then good faith immunity is a meaningless concept as one would have to be free from negligence, and thus not liable in any event, to also avail one's self of the doctrine of good faith immunity. Acting in good faith denotes performing honestly, with proper motive, even if negligently. *See* BLACK'S LAW DICTIONARY 693 (6th ed. 1993); SDCL 55–7–3; *Isaac v. State Farm Mut. Auto Ins. Co.*, 522 N.W.2d 752 (S.D.1994). The standard for determining good faith is a defendant's honest belief in the suitability of the actions taken. *Mackintosh v. Carter*, 451 N.W.2d 285 (S.D.1990). Thus it is immaterial whether a person is negligent in arriving at a certain belief or in taking a particular action. As there was no genuine issue of material fact to dispute good faith, summary judgment was appropriate.

Affirmed.

MILLER, C.J., and SABERS, AMUNDSON and GILBERTSON, JJ., concur.