#27320-a-SLZ

**2015 S.D. 95**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

NICHOLAS SHAWN KLEIN,                    Plaintiff and Appellant,

    v.

SANFORD USD MEDICAL CENTER,              Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA C. RIEPEL
Judge

* * * *

PETER J. BENDORF
Sioux Falls, South Dakota

and

ANDREW BIRKELAND of
Hovland & Rasmus, PLLC
Edina, Minnesota                         Attorneys for plaintiff
                                         and appellant.


MELISSA C. HINTON
REECE M. ALMOND of
Davenport, Evans, Hurwitz
 & Smith, LLP
Sioux Falls, South Dakota                Attorneys for defendant
                                         and appellee.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 5, 2015

OPINION FILED **12/09/15**

#27320

ZINTER, Justice

[¶1.] Nicholas Klein sued Sanford USD Medical Center for damages allegedly caused by his claimed premature discharge from the hospital. The circuit court granted Sanford summary judgment. The court concluded that Sanford was entitled to good faith immunity under SDCL 34-12C-7 because Klein demanded to be discharged against medical advice. Klein appeals, asserting that SDCL 34-12C-7 does not apply, and that if it does apply, there was a genuine dispute of material fact whether Sanford acted in good faith. We affirm.

*Facts and Procedural History*

[¶2.] On January 16, 2011, at approximately 1:00 a.m., thirty-eight-year-old Nicholas Klein drove to the Sanford USD Medical Center emergency department after being struck in the throat and head during an altercation at a bar. The nurse's notes recorded Klein "has a normal mood and effect. . . . His mood appears not anxious. He does not exhibit a depressed mood. He expresses no homicidal and no suicidal ideation." At approximately 2:00 a.m., Klein complained of increasing pain in his neck and throat. Sanford performed a CT scan and recommended that Klein be intubated to protect his airway. Klein was intubated and admitted to the intensive care unit. The nurse's notes indicated that Klein "tolerated the procedure well. There were no complications."

[¶3.] While intubated, Sanford staff administered sedation medication—Propofol, Versed, and Fentanyl. The record is not clear, but it suggests that Klein began to receive sedation medication at 2:30 a.m. To assess the condition of his airway and determine whether Klein should remain intubated, Dr. Ashraf Elshami

-1-

obtained consent from Klein to perform a bronchoscopy. The bronchoscopy revealed no compromise to Klein's airway. At approximately 11:00 a.m., after Klein had been intubated for approximately eight hours, Sanford staff extubated Klein and discontinued administration of sedation medication.

[¶4.] At 11:55 a.m., Klein asked Sanford Nurse Kelli Kolander when he would be allowed to leave the hospital. She informed Klein that a physician would have to discharge him sometime during the week. Klein became agitated and started to pull at his heart rate monitor, IV, and tubing. Klein insisted on leaving the hospital. Kolander informed Klein that he would be leaving against medical advice. She asked that Klein allow her to consult with his physicians, and Klein agreed. Kolander contacted Dr. Curtis Peery (the on-call trauma surgeon) and Dr. Elshami. Dr. Peery did not object to Klein leaving against medical advice. Dr. Elshami informed Kolander that he wanted Klein to drink fluids before leaving. Klein refused. Kolander related Klein's refusal to Dr. Elshami, and Dr. Elshami informed Kolander that Klein could not be forced to drink fluids. Dr. Elshami approved Klein leaving against medical advice. Kolander also contacted Klein's regular physician, Dr. Schaefer, and spoke with Dr. Schaefer's resident. Dr. Schaefer's resident approved Klein leaving against medical advice. According to the nurse's notes, Klein informed Kolander that he had an appointment scheduled with Dr. Schaefer for the next week.

[¶5.] After consulting with Klein's physicians, Kolander obtained Klein's signature on a release form reflecting his desire to leave against medical advice. Kolander also obtained Klein's signature on additional paperwork related to his

discharge. Klein refused to take any discharge paperwork with him. He also refused any assistance with his dressings after the IV was removed. Kolander offered to contact Klein's family. Klein refused, although he gave Kolander permission to inform his family that he had left if his family were to contact the hospital. Klein told Kolander that he would drive himself home. She informed Klein that his judgment and ability to drive could be impaired because he had received sedation medication within the last four hours. The nurse's notes indicated that Klein said he did not care and would drive anyway. The nurse's notes further indicated that Klein "was agitated through this time."

[¶6.] After leaving Sanford at 12:30 p.m., Klein drove to his mother's home, retrieved a bottle of alcohol, and drove to his home in Hills, Minnesota. At some point between 12:30 p.m. and 2:30 p.m., Klein drank the alcohol and overdosed on his HIV medication (Ritonavir and Darunavir) and acetaminophen. Klein then walked out of his house and brutally assaulted his neighbors. Klein later explained that he had no clear memory of his actions after leaving Sanford. Klein had a history of depression, anxiety, and prior suicide attempts.

[¶7.] Klein pleaded guilty to multiple charges related to the assault. As part of his criminal prosecution, a Minnesota court ordered a psychiatric evaluation. Dr. Michael Harlow examined Klein and issued a mental health hold. Dr. Harlow opined that at the time of the assault, Klein was "mentally ill secondary to delirium from medication administration." He concluded that Klein "was laboring under such a defect of reason at the time of the offenses that he did not know the nature of

the acts or that they were wrong." The Minnesota court found Klein "not guilty by reason of mental illness[.]"

[¶8.]	In January 2013, Klein brought this suit against Sanford. He alleged that at the time of his discharge, he was suffering from a state of substance-induced delirium and Sanford should have been aware of his changed mental condition. Klein claimed that Sanford negligently failed to assess his mental condition after he insisted on leaving against medical advice, which failure made him a danger to himself and others. Klein alleged that, as a result of Sanford's discharge, he suffered economic and noneconomic damages.

[¶9.]	Sanford moved for summary judgment, asserting immunity under SDCL 34-12C-7. That statute provides good faith immunity to health care providers who follow a patient's direction for his or her own health care. Sanford claimed that its health care providers acted in good faith when they followed Klein's demand to leave against medical advice. Klein responded that SDCL 34-12C-7 did not apply to his decision to *refuse* health care and that he did not have the capacity to make the decision to leave against medical advice. In deciding the immunity question, the circuit court asked Klein, "[W]hat factors have you shown me of bad faith?" Klein argued that he was not required to show bad faith to defeat a medical provider's claim of good faith immunity under SDCL 34-12C-7. Klein further argued that Sanford did not act in good faith because Sanford should have known Klein was a danger to himself and others based on his mental health history, the medications administered, and the change in his behavior post-extubation.

[¶10.]	The circuit court granted Sanford summary judgment. The court reasoned that SDCL 34-12C-7 applied and that although there were facts alleging negligence, there were "no facts . . . alleging bad faith." Klein appeals, arguing SDCL 34-12C-7 does not apply. If the statute does apply, Klein argues that he presented sufficient evidence to create a disputed issue of material fact whether Sanford acted in good faith.

*Decision*

[¶11.]	Summary judgment is proper when "the moving party demonstrate[s] the absence of any genuine issue of material fact and show[s] entitlement to judgment on the merits as a matter of law." *Brandt v. Cty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874 (quoting *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739, 745). The evidence is viewed "most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists." *Id.* "The circuit court's conclusions of law are reviewed de novo." *Tolle v. Lev*, 2011 S.D. 65, ¶ 11, 804 N.W.2d 440, 444 (quoting *Johnson v. Sellers*, 2011 S.D. 24, ¶ 11, 798 N.W.2d 690, 694).

[¶12.]	Klein first contends that SDCL 34-12C-7 applies only to a person's decision to *receive* medical treatment, not when a person *refuses* medical treatment. SDCL 34-12C-7 grants good faith immunity for a health care provider's determination that a person is able to give consent and for following a patient's directions regarding health care.

> A health care provider who in good faith believes that a person
> is capable of giving informed consent for his own *health care* is

> not subject to . . . civil liability . . . for following that person's direction or for making such determination.

*Id.* (emphasis added). "Health care" is defined as "any care, treatment, service, or procedure to maintain, diagnose, or treat a person's physical or mental condition. The term also includes admission to . . . a licensed health care facility[.]" SDCL 34-12C-1(3). But the statute does not specifically mention the refusal to accept health care. Klein argues that the statute does not apply to a "refusal" to accept health care because the definitional words "care, treatment, service, procedure, maintain, diagnose, and treat" all relate to the actual receipt of various types of health care.

[¶13.] We do not read words or phrases in isolation; rather, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Expungement of Oliver*, 2012 S.D. 9, ¶ 9, 810 N.W.2d 350, 352 (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 1301, 146 L. Ed. 2d 121 (2000)). Furthermore, we do not interpret a statute to reach an absurd result. *Doe v. Quiring*, 2004 S.D. 101, ¶ 18, 686 N.W.2d 918, 923.

[¶14.] Klein's interpretation fails to read the words of the statute in context. SDCL 34-12C-7 provides immunity to a provider who makes a good faith decision to follow a patient's "direction" regarding his or her "health care." The phrase "health care" is broad, and SDCL 34-12C-1(3) defines "health care" to specifically include "admission[s]." Because an admission direction is based on a patient's decision to receive or refuse care in a facility, the statutory scheme contemplates immunity for good faith decisions honoring a patient's decision to refuse further health care at a health care provider's facility. Klein's contrary interpretation is illogical and would

lead to an absurd result. Under Klein's interpretation, the statutory scheme would provide immunity for following a patient's direction to undergo a recommended surgery or treatment, but no immunity would be provided for the same patient's direction to forego that recommended surgery or treatment. The circuit court did not err in concluding that SDCL 34-12C-7 applied to Klein's decision to leave the hospital against medical advice.

[¶15.] Because SDCL 34-12C-7 applies, we next determine whether the circuit court erred in ruling that there was no disputed issue of material fact whether Sanford acted in good faith. Klein points out that the circuit court granted summary judgment, stating that "there are no facts that are alleging bad faith." Klein argues that the court erred in granting summary judgment on this basis because the absence of bad faith is not necessarily synonymous with the presence of good faith. He further contends that the court improperly imposed upon him the initial evidentiary burden to present facts regarding Sanford's good faith.

[¶16.] To address these issues, we must first determine the meaning of "good faith" under SDCL 34-12C-7. Klein contends that "good faith" means "being faithful to one's duty or obligation." *See Kunkel v. United Sec. Ins. Co.*, 84 S.D. 116, 121, 168 N.W.2d 723, 726 (1969) (quoting *Hilker v. W. Auto. Ins. Co.*, 235 N.W. 413, 414 (Wis. 1931)) (involving an insurance contract claim). He further contends that good faith means "faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." *See Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D. 1990) (involving a breach of contract claim). In Klein's view, these

definitions of good faith properly take into account that "health care providers have specialized knowledge and base their decisions on objective evidence[.]"

[¶17.]     Sanford responds that "accepting Klein's definition of good faith would totally gut SDCL 34-12C-7" and afford "health care providers no greater protection than the common law of negligence." Sanford contends that good faith should be defined consistently with this Court's decisions defining good faith in other immunity contexts, such as in making a report of child abuse under SDCL 26-8A-14. *See Purdy v. Fleming*, 2002 S.D. 156, ¶ 24, 655 N.W.2d 424, 432-33 (citing cases).

[¶18.]     From our review of the cases cited by Klein and Sanford, and considering the language of SDCL 34-12C-7, we find persuasive this Court's definition of good faith in the context of the statutory immunity provided in SDCL 26-8A-14. We do so because both good faith for abuse reporting and good faith for health care decision-making implicate immunity considerations, unlike the business-contract considerations at issue in the cases cited by Klein. *See B.W. v. Meade Cty.*, 534 N.W.2d 595, 597 (S.D. 1995) ("[i]mmunity is critical to South Dakota's evident public policy").

[¶19.]     In *B.W.*, we held that "good faith is a defendant's honest belief in the suitability of the actions taken." *Id.* at 598. It means "performing honestly, with proper motive, even if negligently." *Id.* Good faith is not, however, simply the absence of bad faith. Therefore, the circuit court erred in requiring evidence of bad faith in order to resist Sanford's motion for summary judgment. The court also improperly imposed on Klein the initial burden to produce evidence of Sanford's bad

faith. SDCL 34-12C-7 is an affirmative defense, and because Sanford was the moving party, Sanford—rather than Klein—had the initial burden of establishing entitlement to immunity under the statute. *See Dakota Indus., Inc. v. Cabela's.com, Inc.*, 2009 S.D. 39, ¶¶ 12-13, 766 N.W.2d 510, 513-14 (stating that the party asserting an affirmative defense has the initial burden).

[¶20.] Nonetheless, "even if the circuit court 'relied upon a wrong ground or gave a wrong reason[,]'" summary judgment may be affirmed. *Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 5, 581 N.W.2d 510, 513 (quoting *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S. Ct. 154, 158, 82 L. Ed. 224 (1937)); *see also Saathoff v. Kuhlman*, 2009 S.D. 17, ¶ 19, 763 N.W.2d 800, 806. We give no deference to the circuit court's legal conclusions. "If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Jacobson*, 2008 S.D. 19, ¶ 24, 746 N.W.2d at 745 (quoting *Cooper v. James*, 2001 S.D. 59, ¶ 6, 627 N.W.2d 784, 787).

[¶21.] The question then is whether the record indicates that Sanford carried its initial summary judgment burden of establishing good faith. This required a factual showing by Sanford that it acted in good faith when it determined that Klein was capable of giving informed consent and when it decided to follow Klein's direction to leave against medical advice. *See Masad v. Weber*, 2009 S.D. 80, ¶ 15, 772 N.W.2d 144, 152-53 (explaining that the party raising the affirmative defense of immunity has the burden of proving entitlement to that protection). *See also Doctors Hosp. of Augusta, LLC v. Alicea*, 774 S.E.2d 114 (Ga. Ct. App. 2015) (providing that defendants had burden of proving entitlement to summary

judgment on affirmative defense of statutory, good faith immunity); *Carey v. New England Organ Bank*, 843 N.E.2d 1070, 1083 (Mass. 2006) (explaining that the burden is on the plaintiff "to identify competent evidence sufficient for a reasonable jury to find to the contrary" after a defendant moves for summary judgment and makes at least a minimal showing on its affirmative defense that it acted in good faith). We have required that the evidence be sufficient to establish a prima facie case. *Dakota Indus.*, 2009 S.D. 39, ¶ 13, 766 N.W.2d at 514. "A prima facie case is established for summary judgment purposes when there 'are facts in evidence which if unanswered would justify persons of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain.'" *Id.* ¶ 14 (quoting *Fin-Ag, Inc. v. Pipestone Auction Livestock Mkt., Inc.*, 2008 S.D. 48, ¶ 33, 754 N.W.2d 29, 43). We explained in *Cotton v. Stange* that "[t]he presence or absence of good faith requires an examination of the mental state of the person under scrutiny." 1998 S.D. 81, ¶ 11, 582 N.W.2d 25, 29. It "is the actual belief or satisfaction of the criterion of the 'pure heart and empty head.'" *Id.* (quoting *Garvis v. Scholten*, 492 N.W.2d 402, 404 (Iowa 1992)).

[¶22.] With these principles in mind, we review the evidence Sanford submitted to determine if it established a prima facie case of good faith. Sanford relied on the depositions of Klein, Dr. Elshami, and Nurse Kolander. Sanford also relied on the hospital records and notes relating to Klein's emergency department visit, an informed consent form signed by Klein, the release of responsibility form signed by Klein, and a copy of Klein's medical records from Avera McKenna Hospital and University Health Center. We focus particularly on Nurse Kolander's

deposition testimony as she was the Sanford employee caring for Klein when he insisted on leaving against medical advice.

[¶23.] Kolander testified that she did not believe the medication administered to Klein played any part in his request to leave. She explained that "I did not observe him to be under the influence of any medications." She further explained that it would not be unusual for someone to want to leave against medical advice after just being extubated. In her view, people leave against medical advice "in all different sorts of situations. It's just situational." Kolander conceded that she was not aware of Klein's mental health history but testified that she "did not know that it would have changed anything."

[¶24.] Kolander further testified that she informed Klein "[t]hat since he [was] making decisions on his own and [he was] alert and oriented and cognizant, that we [could not] hold him against his will and he [had] the right to leave but that I would have to inform his physicians." Although Klein acted "anxious because he was wanting to leave the hospital," he did allow Kolander to contact his physicians. Kolander contacted Dr. Peery, Dr. Elshami, and Dr. Schaefer's resident. Kolander indicated that Dr. Peery recalled Klein being alert and oriented, and therefore, he had no objection to Klein's departure. Although Dr. Elshami wanted Klein to drink fluids, Dr. Elshami told her, "[I]f the patient's oriented and able to make decisions on his own, we cannot keep him here." Finally, Dr. Schaefer's resident approved Klein's departure.

[¶25.] With respect to Klein's mental status, Kolander testified that Klein's agitation "probably waxed and waned some; not, you know, constant agitation.

Once I said, you know, just - - you have to give us a minute to get our things together, he calmed but was still like, I said, anxious about leaving the hospital." She further explained that Klein received sedation medications only during intubation and that the medications were fast acting with very short half-lives. Kolander testified that "per his neurological standpoint, there's no - - I had no reason I could keep him in the facility."

[¶26.] The foregoing evidence established a prima facie case of good faith. If unanswered, Kolander's testimony would justify persons of ordinary reason and fairness to conclude that Sanford acted in good faith in: (1) determining that Klein was capable of giving informed consent for his health care, and (2) honoring Klein's direction to be discharged against medical advice. Therefore, the burden of production shifted to Klein to identify facts creating a genuine dispute whether Sanford acted in good faith. *See Dakota Indus., Inc.*, 2009 S.D. 39, ¶ 14, 766 N.W.2d at 514 (noting that one opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial" (quoting SDCL 15-6-56(e))).

[¶27.] Klein argues that the objective medical evidence created a material dispute of fact regarding Sanford's good faith. Klein emphasizes that Sanford was in physical control of him while it administered sedatives several hours before he became agitated and demanded to leave the hospital. According to Klein, Sanford should have been aware that his HIV medications could increase or prolong the sedative effects of the hospital's medications. Klein further contends that Sanford should have been aware, based on his history of mental health issues, that he was suffering from a substance-induced delirium when he insisted on leaving. Klein

relies on Dr. Lynn Maskel's opinion that the sedation medications "can create paradoxically in patients upon awakening, high levels of agitation, delirium, which is reflected in high levels of agitation, erratic behaviors and illogical thought processes." According to Dr. Maskel, "Delirium is a disorder which is not uncommon in medical settings such as ICUs with intubated patients." Dr. Maskel considered that Klein's medical records contained a notation that mental health should sign off on his case prior to his departure. Therefore, she opined that, "[b]ased on the information known at the time," Klein should have "been directly evaluated for delirium" in light of his "request for discharge within an hour of extubation with a resulting significant fluctuation of mental status that included 'very agitated' and 'verbally aggressive[.]'"

[¶28.] Klein also relies on Dr. Christopher Hanley's deposition testimony that, based on Klein's "behavior and sensorium leading up to [his departure], he should have been seen by a medical or mental health provider to assess whether or not he had the capacity to make that decision." In Dr. Hanley's opinion, the medications administered by Sanford were the cause and source of Klein's delirium, and therefore, Sanford had a duty to assess Klein's capacity to leave against medical advice. Lastly, Klein asserts that Sanford was aware that he was a risk to others because Kolander advised him prior to his departure that the medication could affect his judgment and ability to drive.

[¶29.] We agree that Klein's evidence includes numerous, objective facts suggesting negligence. But these objective facts are not "material," thus precluding summary judgment, "unless [they] would affect the outcome of the suit under the

governing substantive law[.]" *Niesche v. Wilkinson*, 2013 S.D. 90, ¶ 9, 841 N.W.2d 250, 253-54 (quoting *A-G-E Corp. v. State*, 2006 S.D. 66, ¶ 14, 719 N.W.2d 780, 785). And here, the evidence of negligence would not affect the outcome of the suit under the governing substantive law because "negligence and lack of good faith are not equivalent. Simply put, if good faith immunity can be overcome by establishing negligence, then good faith immunity is a meaningless concept as one would have to be free from negligence, and thus not liable in any event, to also avail one's self of the doctrine of good faith immunity." *See B.W.*, 534 N.W.2d at 598. Therefore, Klein's evidence that Sanford employees were negligent was not material for purposes of resisting summary judgment on Sanford's claim that it acted in good faith. *See id.* The circuit court correctly ruled that Klein failed to identify specific facts showing that there was a genuine issue of disputed fact for trial on the question of Sanford's good faith.

[¶30.] We conclude that SDCL 34-12C-7 applies. Further, there is no disputed issue of material fact that Sanford acted in good faith. Therefore, the circuit court correctly granted summary judgment.

[¶31.] GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.