#28401-a-GAS
**2018 S.D. 67**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DOMSON, INC.,                                    Plaintiff and Appellant,

   v.

KADRMAS LEE & JACKSON, INC.
and DAKOTA ENGINEERING, LLC,      Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE HEIDI L. LINNGREN
Judge

* * * *

RONALD G. SCHMIDT of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota                Attorneys for appellant.


MICHAEL L. LUCE
DANA VAN BEEK PALMER of
Lynn, Jackson, Shultz
  & Lebrun, P.C.
Sioux Falls, South Dakota               Attorneys for defendants and
                                        appellees.

* * * *

CONSIDERED ON BRIEFS
ON MAY 21, 2018
OPINION FILED **09/19/18**

#28401

SEVERSON, Retired Justice

[¶1.] Domson, Inc. brought suit against Dakota Engineering and Kadrmas, Lee and Jackson (KLJ) for professional negligence.[1] Dakota Engineering and KLJ moved for summary judgment. During the hearing, Dakota Engineering/KLJ asserted that a clause in the contract between Domson and the Oglala Sioux Tribe insulated them from liability for negligence to Domson. The circuit court agreed and separately granted Dakota Engineering and KLJ summary judgment. Domson appeals. We requested supplemental briefing from the parties on the enforceability of exculpatory clauses insulating a third party from claims of negligent design and negligent administration and interpretation of a contract. We affirm.

## Background

[¶2.] The Oglala Sioux Tribe hired Dakota Engineering/KLJ to design a road reconstruction project on the Pine Ridge Indian Reservation. On March 21, 2012, the Tribe advertised the project for bids. Prospective bidders could inspect the contract documents, including the drawings and project manual. It is unclear whether Dakota Engineering or KLJ prepared the bid documents, including the project manual, the proposal to bidders, plans, specifications, estimates, and amendments for the project. However, the record reveals that the manual and documents relevant to the request for bids were signed and sealed in March 2012 by Tonya Tordsen of KLJ.

---

1. The contract documents and the parties at times refer to the defendants as Dakota Engineering/KLJ and at times as independent defendants. Throughout this opinion, we use the designations employed by the parties and contract where appropriate.

[¶3.]    It is undisputed that Domson obtained the bid documents and submitted a bid on the project. The public bid opening revealed Domson as the apparent low bidder. KLJ informed Domson that Domson had been awarded the bid. On July 5, 2012, Domson and the Tribe executed a contract for the project. The contract between Domson and the Tribe designated Dakota Engineering/KLJ as the "Engineer" and the Tribe's representative. The contract provided that "Engineer assumes all duties and responsibilities, and has the rights and authority assigned to Engineer in the Contract Documents in connection with the completion of the Work in accordance with the Contract Documents." KLJ had the duty to administer the contract for the Tribe, including the processing of applications for payment by Domson. Change orders and payments needed approval from the Tribe.

[¶4.]    It is undisputed that Domson did not substantially complete the project in the time required under the contract. KLJ, as the Tribe's representative, assessed Domson $103,950 in liquidated damages. In January 2015, Domson brought suit against Dakota Engineering and KLJ, alleging professional negligence. Domson asserted that "Dakota Engineering/KLJ owed a duty to Domson to reasonably draft, interpret, and apply the project's contract documents." Domson alleged that "Dakota Engineering/KLJ were negligent in their design, interpretation, and application of the plans and specifications[.]" According to Domson, Dakota Engineering/KLJ's negligence in designing and administering the contract caused Domson approximately $1,138,027.28 in damages.

[¶5.]    Dakota Engineering and KLJ filed a joint answer. Dakota Engineering denied that it was a proper defendant because Dakota Engineering's

"only involvement was initial design work[.]" Dakota Engineering/ KLJ asserted that Domson's alleged damages arose out of its contract with the Tribe. Dakota Engineering and KLJ filed a joint motion for summary judgment. They again indicated that Dakota Engineering was only involved in the design work and did not administer the contract. Dakota Engineering/KLJ also highlighted Paragraph 9.09 of the standard general conditions contract document. That paragraph provides:

> Neither Engineer's authority or responsibility under this Article 9 or under any other provision of the Contract Documents nor any decision made by Engineer *in good faith* either to exercise or not exercise such authority or responsibility or the undertaking, exercise, or performance of any authority or responsibility by Engineer shall create, impose, or give rise to any duty in contract, tort, or otherwise owed by Engineer to Contractor, or any Subcontractor, any Supplier, any other individual or entity, or to any surety for or employee or agent of any of them.

(Emphasis added.)

[¶6.] Domson did not submit "a separate, short, and concise statement of the material facts as to which" it contended a genuine issue existed as required by SDCL 15-6-56(c)(2). Instead, it submitted a brief in opposition to the motion for summary judgment. But the brief did not "respond to each numbered paragraph in the moving party's statement with a separately numbered response and appropriate citations to the record." *See id.* Rather, Domson's brief grouped arguments together with general responses. Domson's brief also did not cite to the record. Nevertheless, in the brief, Domson referred the circuit court to *Mid-Western Electric, Inc. v. DeWild Grant Reckert & Associates, Co.*, as authority for recognizing that Dakota Engineering/KLJ owed a duty to Domson to reasonably draft, interpret,

and apply the project's contract documents. 500 N.W.2d 250 (S.D. 1993). Domson asserted generally that issues of material fact existed on the question of breach of that duty.

[¶7.]     The circuit court issued a memorandum decision. The court granted summary judgment on all claims against Dakota Engineering. It concluded that Dakota Engineering was not an appropriate party in the lawsuit. The court also granted summary judgment on all claims against KLJ. Although Domson did not comply with SDCL 15-6-56(c)(2), the court gave Domson "the benefit of the doubt with what [it had] submitted" in response to the motion for summary judgment. After considering Domson's submissions, the court concluded that Domson offered mere general allegations and denials. The court also interpreted Paragraph 9.09 to insulate KLJ from liability to Domson for negligence, absent a claim by Domson that KLJ acted in bad faith.

[¶8.]     In response to the court's decision, Domson filed a motion and brief in support requesting the circuit court reconsider its decision granting summary judgment. It asserted that Paragraph 9.09 was unlawful under SDCL 53-9-3. Domson then filed a supplemental brief in support of its motion for reconsideration. It restated its position that because KLJ owed it a duty, a jury must determine whether KLJ breached that duty. The court denied Domson's motion to reconsider.

[¶9.]     Domson appeals and asserts the following issues, which we restate as follows:

> 1. Whether summary judgment was improper because defendants failed to plead Paragraph 9.09 as an affirmative defense.

2. Whether the circuit court erred when it granted summary judgment based on Paragraph 9.09 of the standard general conditions contract document.

3. Whether the circuit court erred when it granted summary judgment despite that defendants admitted they owed a duty to Domson.

**Standard of Review**

[¶10.]     Under our well-settled standard of review on appeal from a grant of summary judgment:

> We must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Brand v. Cty. of Pennington*, 2013 S.D. 22, ¶ 7, 827 N.W.2d 871, 874 (quoting *Jacobson v. Leisinger*, 2008 S.D. 19, ¶ 24, 746 N.W.2d 739).

**Analysis**

[¶11.]     Domson contends that Dakota Engineering and KLJ could not rely on Paragraph 9.09 in the standard general conditions contract document to insulate themselves from liability because they failed to plead Paragraph 9.09 either in avoidance or as an affirmative defense. Dakota Engineering and KLJ respond that they asserted Paragraph 9.09 as a defense in their answer by pleading the affirmative defenses of estoppel and waiver. They also claim that Domson failed to raise waiver before the circuit court. We agree that Domson waived the issue. Because Domson failed to assert this argument to the circuit court, we will not

address it for the first time on appeal. *See Rush v. U.S. Bancorp Equip. Finance, Inc.*, 2007 S.D. 119, ¶ 8 n.1, 742 N.W.2d 266, 269 n.1.

[¶12.]     We combine Domson's next two issues because both relate to whether Dakota Engineering and KLJ owed Domson a duty under the circumstances. The circuit court recognized that under South Dakota law, an engineer can owe a duty to a contractor despite the lack of contractual privity between the parties. *See Mid-Western Elec.*, 500 N.W.2d at 253-54. But, here, the contract between the Tribe and Domson, via Paragraph 9.09, insulated Dakota Engineering/KLJ from liability for their good-faith acts and failures to act by the authority given to them under the contract and contract documents. Therefore, although a duty may exist under *Mid-Western Electric*, we must examine the effect of Paragraph 9.09.

[¶13.]     Domson argues that "the exculpatory clause should be construed as an indemnity provision that violates statute[,]" citing SDCL 56-3-16, -17. But Domson did not assert this argument to the circuit court, and further, it exceeds the scope of this Court's inquiry on supplemental briefing. We, therefore, decline to address whether Paragraph 9.09 should be construed as an indemnity provision. For the same reason, we decline to examine Domson's claim that Paragraph 9.09 is unconscionable and its argument in its supplemental brief that the contract between the Tribe and Domson is a contract of adhesion. *See Rush*, 2007 S.D. 119, ¶ 8 n.1, 742 N.W.2d at 269 n.1 (The failure to assert an argument below waives it on appeal.).

[¶14.]     Nonetheless, Domson further claims that Paragraph 9.09 "is against the policy of the law" under SDCL 20-9-1, SDCL 53-9-3, and SDCL 53-9-1. It claims

that SDCL 20-9-1 and SDCL 53-9-3 evince a public policy forbidding the enforcement of Paragraph 9.09. It also asserts that *Lyndon Property Insurance Co. v. Duke Levy and Associates*, "is persuasive authority on the unenforceability of an engineer's exculpatory clause." 475 F.3d 268 (5th Cir. 2007).

[¶15.]	It is well settled that "[a] contract provision contrary to an express provision of law or to the policy of express law . . . is unlawful." SDCL 53-9-1. *Law Capital, Inc. v. Kettering*, 2013 S.D. 66, ¶ 10, 836 N.W.2d 642, 645. "Public policy is found in the letter or purpose of a constitutional or statutory provision or scheme, or in a judicial decision." *Niesent v. Homestake Mining Co.*, 505 N.W.2d 781, 783 (S.D. 1993). SDCL 20-9-1 provides: "Every person is responsible for injury to the person, property, or rights of another caused by his willful acts or caused by his want of ordinary care or skill, subject in the latter cases to the defense of contributory negligence." Further, SDCL 53-9-3 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud or willful injury to the person or property of another or from violation of law whether willful or negligent, are against the policy of the law."

[¶16.]	Although SDCL 20-9-1 mandates responsibility for injury caused by willful acts or want of ordinary care or skill, nothing in this statute prohibits one party from agreeing by contract to release a third party from liability for ordinary negligence. *See, e.g.*, *Lee v. Beauchene*, 337 N.W.2d 827, 829 (S.D. 1983) (contractual release not prohibited by SDCL 20-9-1). Moreover, although Domson claims Paragraph 9.09 is contrary to SDCL 53-9-3 because it purports to exempt Dakota Engineering/KLJ from a "violation of law whether willful or negligent[,]" we

-7-

disagree. Domson's suit against Dakota Engineering and KLJ alleges professional negligence, not a willful or negligent violation of law. *Accord Holzer v. Dakota Speedway, Inc.*, 2000 S.D. 65, ¶ 16, 610 N.W.2d 787, 793 ("releases that are construed to cover willful negligence or intentional torts are not valid and are against public policy").

[¶17.] We next address Domson's claim that this Court should adopt the view that exculpatory clauses such as Paragraph 9.09 are unenforceable based on the reasoning espoused in *Lyndon Prop. Ins. Co.*, 475 F.3d at 268 and *Transpower Constructors v. Grand River Dam Authority*, 905 F.2d 1413 (10th Cir. 1990). Domson contends that *Lyndon* more aligns with South Dakota public policy as compared to the cases cited by Dakota Engineering and KLJ. In response, Dakota Engineering and KLJ claim that "courts are in agreement that not only the very exculpatory clause at issue here is enforceable, but that exculpatory clauses in general are enforceable in cases such as the present, in which ordinary negligence is alleged." *See, e.g., Patriot Contracting, LLC v. Star Ins. Co.*, No. 15-6634, 2018 WL 1123586 (E.D. La. March 1, 2018); *Indiana Dept. of Transp. v. Shelly & Sands, Inc.*, 756 N.E.2d 1063 (Ind. Ct. App. 2001); *Ric-Man Constr., Inc. v. Neyer, Tiseo & Hindo Ltd.*, No. 329159, 2017 WL 188049 (Mich. Ct. App., January 17, 2017); *Excel Constr., Inc. v. HKM Eng'g, Inc.*, 228 P.3d 40 (Wyo. 2010).

[¶18.] In *Lyndon*, the Fifth Circuit Court of Appeals examined the enforceability of exculpatory language similar to that in Paragraph 9.09. 475 F.3d at 272. A county district had entered into a contract with a utilities contractor for construction of a sewer system. The county district also entered into a contract with

an engineer. The engineer, prior to the completion of the project, terminated the utilities contractor. The contractor's surety funded the completion of the project but brought suit against the engineer asserting its right to recover in the shoes of the county district (not the contractor) under the doctrine of equitable subrogation. The engineer claimed that a clause in the contract between the county district and the contractor insulated the engineer from liability to anyone but the county district. On appeal, the Fifth Circuit Court of Appeals disagreed. It held that "the District cannot bargain away the engineer's potential duty to a surety that would step into the District's shoes under the doctrine of equitable subrogation." *Id.*

[¶19.] Here, however, Domson is not seeking to stand in the shoes of the Tribe in its suit against Dakota Engineering and KLJ. Moreover, the doctrine of equitable subrogation is not implicated. *Transpower Constructors* is likewise distinguishable. In *Transpower Constructors*, the court found the exculpatory clause unenforceable because of ambiguity, not because of public policy. 905 F.2d at 1421.

[¶20.] "[T]his Court has cautioned ever since territorial days" that "'[t]he power of courts to declare a contract void for being in contravention of sound public policy, is a very delicate and undefined power; and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.'" *Law Capital*, 2013 S.D. 66, ¶ 13, 836 N.W.2d at 645 (quoting *Sch. Dist. No. 61 v. Collins*, 6 Dakota 145, 41 N.W. 466, 468 (1889)). Based on our review of the contract documents as a whole and in light of Domson's failure to identify a statutory provision or scheme or judicial decision from this Court to support its argument

that Paragraph 9.09 is unlawful, we decline to declare Paragraph 9.09 void under the circumstances.

[¶21.] This is not to say that every exculpatory clause insulating a third party from liability for negligence will be enforceable. Nor does today's decision mean that we adopt the views expressed by the authorities cited by Dakota Engineering/KLJ in response to this Court's request for supplemental briefing. Rather, Paragraph 9.09 is valid and enforceable in this case because Domson has not identified that Paragraph 9.09 contravenes sound public policy in this State under these particular circumstances. The exculpatory language unambiguously informed Domson that Dakota Engineering/KLJ would be immune from suit in tort or contract arising out of Dakota Engineering/KLJ's good-faith acts and failures to act by the authority given to them under the contract and contract documents.

[¶22.] Although we hold that Paragraph 9.09 is valid and enforceable under the circumstances, Dakota Engineering and KLJ must still establish entitlement to the protections afforded by Paragraph 9.09. When the circuit court granted summary judgment, relying on Paragraph 9.09, it erroneously imposed the initial burden on Domson to establish bad faith on the part of the engineer. Paragraph 9.09 is an affirmative defense. As the part asserting the defense, Dakota Engineering and KLJ had the burden of showing that they acted in good faith. *See Klein v. Sanford USD Med. Ctr.*, 2015 S.D. 95, ¶ 19, 872 N.W.2d 802, 807 (citing *Dakota Indus., Inc. v. Cabela's.com, Inc.*, 2009 S.D. 39, ¶¶ 12-13, 766 N.W.2d 510, 513-14). Despite the court's error, "[i]f there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper." *Jacobson,*

2008 S.D. 19, ¶ 24, 746 N.W.2d at 745 (quoting *Cooper v. James*, 2001 S.D. 59, ¶ 6, 627 N.W.2d 784, 787).

[¶23.]      As we recognized in *Klein*, the party asserting the affirmative defense must establish a prima facie case of good faith.  2015 S.D. 95, ¶ 26, 872 N.W.2d at 810.  "A prima facie case is established for summary judgment purposes when there 'are facts in evidence which if unanswered would justify persons of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain.'" *Dakota Indus., Inc.*, 2009 S.D. 39, ¶ 14, 766 N.W.2d at 514 (quoting *Fin-Ag, Inc. v. Pipestone Livestock Auction Mkt., Inc.*, 2008 S.D. 48, ¶ 33, 754 N.W.2d 29, 43).  Once a prima facie case of good faith is established, the burden of production shifts to the resisting party to "identify facts creating a genuine dispute whether" the defendants acted in good faith.  *Klein*, 2015 S.D. 95, ¶ 26, 872 N.W.2d at 809 (citing *Dakota Indus., Inc.*, 2009 S.D. 39, ¶ 14, 766 N.W.2d at 514 (quoting SDCL 15-6-56(e)) (noting that one opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial").

[¶24.]      Domson alleged that Dakota Engineering and KLJ were negligent in their interpretation and application of the plans and specifications for the project, which negligence harmed Domson.  In response, Dakota Engineering/KLJ claimed that their interpretation and application of the project documents met their professional responsibilities and was appropriate under the circumstances.  Dakota Engineering/KLJ relied on letters sent between Domson and KLJ and on the deposition testimony of defendant representatives as evidence of Domson's failures throughout the project.

[¶25.]     Good faith is not defined in Paragraph 9.09.  This Court has defined "good faith" in the context of immunity statutes, in estate cases, in cases of breach of contract under the Uniform Commercial Code, and in insurance cases.  *See Klein*, 2015 S.D. 95, ¶ 18, 872 N.W.2d at 806 (immunity case); *In re Estate of Klauzer*, 2000 S.D. 7, ¶ 35, 604 N.W.2d 474, 482 (estate case); *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D.1990) (breach of contract claim); *Kunkel v. United Sec. Ins. Co.*, 84 S.D. 116, 121, 168 N.W.2d 723, 726 (1969) (insurance contract claim).  Although written in the context of general contract terms under the Uniform Commercial Code, we find helpful the following explanation:

> [G]ood faith is an 'excluder.'  It is a phrase without general meaning (or meanings) of its own and serves to exclude a wide range of heterogeneous forms of bad faith.  In a particular context the phrase takes on specific meaning, but usually this is only by way of contrast with the specific form of bad faith actually or hypothetically ruled out.

*Garrett*, 459 N.W.2d at 841 (quoting Summers, *Good Faith in General Contract Law and the Sales Provision of the Uniform Commercial Code,* 54 Va. L. Rev. 195, 201 (1968)).  This is not to say that good faith simply means the absence of bad faith. *Klein*, 2015 S.D. 95, ¶ 19, 872 N.W.2d at 807.  Indeed, good faith has been defined to mean: "honesty in fact concerning conduct or a transaction," and "[g]ood faith is distinguished from mere negligence or an honest mistake." *Klauzer*, 2000 S.D. 7, ¶ 35, 604 N.W.2d at 482 (quoting *In re Estate of Watkins*, 501 N.W.2d 292, 296 (Neb. 1993)).

[¶26.]     Based on our review of the record, Dakota Engineering/KLJ established a prima facie case of good faith against Domson's claim of negligent interpretation and application, implicating the protections under Paragraph 9.09.

Therefore, as the party resisting summary judgment, Domson was required to identify a material issue of fact in dispute on the question of Dakota Engineering/KLJ's good-faith acts and failures to act. *See Klein*, 2015 S.D. 95, ¶ 26, 872 N.W.2d at 809 (burden of production shifted to resisting party). Domson submitted an expert opinion by professional engineer Lawrence Kostaneski. Kostaneski opined that "KLJ's engineering services on this project [were] below an acceptable standard found on several engineering projects generally." Kostaneski found fault in Dakota Engineering/KLJ's failure "to objectively evaluate the circumstances, determine its impact on cost and/or time, and take the appropriate action to adjust the bid amount or schedule." The negligence, according to Kostaneski, existed because KLJ "chose the wrong field tactic when deciding how to handle circumstances that clearly could not have been known—or were not revealed—to bidders."

[¶27.]     Although Domson presented evidence that Dakota Engineering/KLJ allegedly performed below acceptable engineering standards in administering the contract, Domson has not identified, in response to Dakota Engineering/KLJ's prima facie showing, that a material issue of fact is in dispute on whether Dakota Engineering/KLJ acts or failures to act lacked good faith. Rather, Domson relies on general allegations and denials that because Dakota Engineering/KLJ performed below acceptable standards, their actions necessarily lacked good faith. But a party may not resist summary judgment with mere denials and allegations. *Tolle v. Lev*, 2011 S.D. 65, ¶ 22, 804 N.W.2d 440, 446. The circuit court correctly granted Dakota

Engineering and KLJ summary judgment on Domson's claims of negligent interpretation and application.

[¶28.]     Domson's complaint also alleged a cause of action against Dakota Engineering/KLJ for *negligent design.* The complaint asserted that "it was readily foreseeable that Domson, who was bound to follow these documents *prepared by the engineering firm*, could be harmed by the engineering firm's *negligent drafting* or interpretation and application of the contract documents." (Emphasis added.) The circuit court did not examine whether a material issue of fact existed on this claim or whether Paragraph 9.09 insulated Dakota Engineering/KLJ from liability. It summarily dismissed Domson's entire suit. Nevertheless, "[c]ontract interpretation is a question of law reviewable de novo." *Black Hills Excavating Servs., Inc. v. Retail Constr. Servs., Inc.*, 2016 S.D. 23, ¶ 7, 877 N.W.2d 318, 321 (quoting *Vander Heide v. Boke Ranch, Inc.*, 2007 S.D. 69, ¶ 17, 736 N.W.2d 824, 831).

[¶29.]     The plain language of the exculpatory clause only disclaimed Dakota Engineer/KLJ from liability in tort and contract for their "authority or responsibility under this Article 9 or under any other provision of the Contract Documents [or] any decision made by Engineer in good faith either to exercise or not exercise such authority or responsibility or the undertaking, exercise, or performance of any authority or responsibility by Engineer[.]" When Dakota Engineering or KLJ designed and drafted the plans and specifications for the project, Domson and the Tribe had not yet executed the contract. Therefore, Dakota Engineering/KLJ could not have been exercising authority or responsibility under

Article 9 or under other provisions of the contract documents as provided in the contract between the Tribe and Domson.

[¶30.]	In *Mid-West Electric*, we quoted *Waldor Pump & Equipment v. Orr-Schelen-Mayeron & Associates*, for the proposition that an engineering firm could owe a duty to reasonably draft and interpret the project specifications and that it is foreseeable that a contractor, bound to follow the specifications prepared by the engineering firm, could be harmed by the firm's negligence in drafting and interpreting the specifications.  500 N.W.2d at 254 (quoting 386 N.W.2d 375, 377 (Minn. Ct. App. 1986)).  In *Mid-West Electric*, we instructed circuit "courts to use the legal concept of foreseeability to determine whether a duty exists." *Id.* "The nature of the professional's duty, the standard of care imposed, varies in different circumstances[.]  In our view the extent of appellee's duty may best be defined by reference to the [foreseeability] of injury consequent upon breach of that duty." *Id.* (quoting *A.R. Moyer, Inc. v. Graham*, 285 So. 2d 397, 400 (Fla. 1973)).

[¶31.]	Here, Dakota Engineering and KLJ do not dispute that they owed Domson a duty.  Nevertheless, they assert that Domson has not identified a material issue of fact in dispute on the element of breach of that duty.  They direct this Court to Domson's expert's letter opinion.  In that letter, Kostaneski recognized that

> [n]o set of project documents are perfect, nor are field conditions exactly as described in those documents.  Consequently, projects have several strategies for adjusting to these changed conditions.  Change orders are a commonly recognized method for dealing with any condition or circumstance that might arise and was unforeseen or overlooked at the time of document preparation.

[¶32.]     In response, Domson argues that errors existed in the project and bid documents. It quoted excerpts from deposition testimony by Dakota Engineering/KLJ experts, in which depositions those witnesses purportedly admitted to the errors. In particular, they admitted that the formal artifact search had not been completed prior to the bid, which failure Domson claimed caused delay in completing the project. Domson also relied on its expert's opinion and on correspondence between Trig Domson and KLJ that many problems in the design phase were negligent, including that the documents did not identify an existing pipe, which omission Domson claimed affected grading.

[¶33.]     While Domson's evidence establishes that errors existed in the project and bid documents, Domson has not demonstrated a genuine, material issue for trial concerning whether the existence of errors in a project's bid documents constituted a breach of the applicable standard of care for the duty to reasonably draft project specifications. In fact, although Kostaneski identified errors in the project documents, he never suggested that design problems violated any standard of care, let alone the standard of care for architects and engineers. Moreover, he unequivocally indicated that problems in the design phase were normal and should have been worked out during the contract administration. He noted that each of Domson's "25 separate claims" was based on "events and decisions of KLJ that occurred during the course of the project." Although summary judgment is disfavored in cases of negligence, Domson has not established a material issue of fact in dispute on the question of breach.

**Conclusion**

[¶34.]     Domson has not identified that Paragraph 9.09 contravenes sound public policy under the circumstances, and Paragraph 9.09 unambiguously insulates Dakota Engineering and KLJ for liability in tort and contract for their good-faith acts and failures to act under the authority granted to them by the contract and contract documents.  Further, although the court improperly imposed a burden on Domson to prove bad faith, on this record, Dakota Engineering/KLJ established a prima facie case of good faith, and Domson has failed to identify a material issue of fact in dispute on the issue of Dakota Engineering/KLJ's good-faith acts and failures to act in the interpretation and application of the contract documents.  Also, Domson has not presented specific facts showing that a genuine, material issue exists for trial that Dakota Engineering/KLJ's design and drafting fell below a professional standard of care.  Therefore, we affirm.

[¶35.]     GILBERTSON, Chief Justice, and ZINTER and JENSEN, Justices, concur.

[¶36.]     KERN, Justice, concurs in part and dissents in part.

[¶37.]     SALTER, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.


KERN, Justice (concurring in part and dissenting in part).

[¶38.]     I join issues 1 and 2 of the majority opinion but dissent on issue 3 wherein the majority affirms the grant of summary judgment on Domson's claim of negligent design.  Domson established genuine issues of fact sufficient to require a

jury to determine whether Dakota Engineering/KLJ breached the standard of care and caused Domson damages due to negligence in designing the project plans.

[¶39.] Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). "We view the evidence *most favorably to the nonmoving party* and resolve all reasonable doubts against the moving party." *State Auto Ins. Cos. v. B.N.C.*, 2005 S.D. 89, ¶ 6, 702 N.W.2d 379, 382 (emphasis added). To defeat summary judgment, the nonmoving party must "show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof." *Foster-Naser v. Aurora Cty.*, 2016 S.D. 6, ¶ 11, 874 N.W.2d 505, 508. "[M]ere general allegations and denials which do not set forth specific facts will not prevent the issuance of a judgment." *Bordeaux v. Shannon Cty. Schs.*, 2005 S.D. 117, ¶ 14, 707 N.W.2d 123, 127. Nonetheless, "[s]ummary judgment is an extreme remedy, and is not intended as a substitute for a trial." *Stern Oil Co., Inc. v. Brown*, 2012 S.D. 56, ¶ 9, 817 N.W.2d 395, 399.

[¶40.] Here, the majority opinion focuses on a statement made by Domson's expert, Larry Kostaneski, that not all "project documents are perfect, nor field conditions exactly as described in those documents" for the proposition that Domson's expert "never suggested that design problems violated any standard of care, let alone the standard of care for architects and engineers." *See* Majority Opinion ¶¶ 31, 33. For the majority, this suggests that there is no genuine,

material issue for trial because Domson failed to make a specific assertion that the project's design fell below the standard of care. However, that reasoning does not account for Kostaneski's opinion that there were problems with "the package released for the public bid process" which made it "quickly apparent that several critical issues were going to have a significant impact on both the scope and schedule of the work."

[¶41.] Specifically, Kostaneski explained that shortly after the project began, Dakota Engineering/KLJ informed Domson that a restriction existed with respect to commencing construction on a 3,000-foot area at the beginning of the project. Domson learned that, due to an impending artifact study, the area remained ineligible for development until completion of the survey. No mention of the study was included in the design plans, and even Dakota Engineering/KLJ's own expert, Dennis Micko, agreed that preliminary inspections, reports, and environmental artifact studies "[n]ormally . . . would have been completed in advance of [the bidding]." Domson contends that this deficiency caused delay in completing the project, which resulted in accrual of additional damages under the contract's liquated damages provision.

[¶42.] Additionally, Kostaneski noted problems with beginning construction at the other end of the project. The project's drafters had incorrectly identified an existing pipe on the plans, so the construction team decided to delete it. According to Kostaneski, this decision significantly impaired Domson's progress. Kostaneski described the effect on the project stating, "Unfortunately, it also meant that this end of the project would not have the plan grade. Domson had already graded this

area to the original plan elevations, which required a significant adjustment to return it to the field changed elevation. KLJ seemed disinclined to recognize this unanticipated effort and delay."

[¶43.]    "Summary judgment . . . was never intended to enable parties to evade jury trials or have the judge weigh evidence in advance of it[] being presented." *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951). Yet, by declaring that Domson's factual assertions are mere general allegations referring to contract administration and not design, the majority opinion's conclusion regarding negligent design of the project plans weighs the evidence presented. We must instead view the facts in light favorable to Domson and give it the benefit of all reasonable inferences. *See Dakota Pork Indus. v. City of Huron*, 2002 S.D. 3, ¶ 5, 638 N.W.2d 884, 885 ("All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party.").

[¶44.]    Domson presented a sufficient case for negligent design of the project plans to survive summary judgment. Project design was among the engineering services KLJ provided Domson,[2] and Dakota Engineering/KLJ admitted that it owed Domson a duty. Domson's expert further opined that "KLJ's engineering services on this project [were] below an acceptable standard found on civil engineering projects generally." This statement regarding the standard of care was broad enough to include the design errors Kostaneski identified in the project documents. Disputed issues of fact exist regarding whether: (1) the construction delay resulting from the incomplete artifact study increased Domson's damages on

---

2.    The project was designed by KLJ employee Tonya Tordsen.

the contract; and (2) the error in the project's plans that misidentified a pipe created additional damages under the contract by requiring Domson to return the grade to the "field changed elevation." Domson "need only present evidence from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986). This it has done. Therefore, I respectfully dissent from the majority decision affirming summary judgment on Domson's claim of negligent design of the project plans.