#24950-a-SLZ

**2009 SD 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DAKOTA INDUSTRIES, INC.,                    Plaintiff and Appellant,

   v.

CABELA'S.COM, INC.,                         Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

JOHN R. PEKAS                               Attorney for plaintiff
Sioux Falls, South Dakota                   and appellant.

KENT R. CUTLER
NICHOLE MOHNING ROTHS of
Cutler & Donahoe, LLP
Sioux Falls, South Dakota

THOMAS I. ROSS
GREGORY J. CHINLUND of
Marshall, Gerstein & Borun, LLP            Attorneys for defendant
Chicago, Illinois                           and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MARCH 23, 2009

OPINION FILED **05/20/09**

#24950

ZINTER, Justice

[¶1.] Dakota Industries, Inc. sued Cabela's.com, Inc., alleging that Cabela's unlawfully used Dakota Industries' state registered trademark. Cabela's moved for summary judgment, arguing that Dakota Industries abandoned the trademark through non-use. The circuit court granted Cabela's motion, and Dakota Industries appeals. We affirm.

*Facts and Procedural History*

[¶2.] Dakota Industries is a South Dakota corporation engaged in the business of manufacturing and marketing outerwear products. Cabela's is a Nebraska corporation engaged in the on-line sale of retail goods. In 1968, the South Dakota Secretary of State granted Dakota Industries the trademark "DAKOTA" for its products, and in September 2006, Dakota Industries renewed its registration. During 2006, Cabela's sold clothing using the designation "Dakota Vest" and "Dakota Jacket."

[¶3.] As a result of these sales, Dakota Industries sued Cabela's in December 2006, asserting a number of causes of action all based on state trademark infringement. In October 2007, Dakota Industries moved to compel discovery. The circuit court denied Dakota Industries' request for Cabela's to copy and ship documents to Dakota Industries. The court did, however, order that Dakota Industries could inspect and copy documents at Cabela's offices in Sydney, Nebraska.

[¶4.] In April 2008, Cabela's moved for summary judgment on the ground that Dakota Industries had abandoned the DAKOTA trademark by non-use.

Dakota Industries resisted on the merits and also on the ground that Cabela's had not complied with discovery requests. Cabela's responded that the documents at issue -- records of *Cabela's* national *sales* -- were not relevant to the summary judgment issue regarding *Dakota Industries'* non-use of the trademark. After a hearing on both issues, the circuit court granted Cabela's motion for summary judgment. The court further determined that Dakota Industries' motion to compel disclosure of Cabela's sales was moot in light of Dakota Industries' abandonment of its trademark.

[¶5.] Dakota Industries appeals raising three issues: (1) whether the circuit court erred in granting summary judgment without requiring compliance with Dakota Industries' discovery requests; (2) whether the circuit court imposed the correct summary judgment burden on Dakota Industries; and (3) whether the circuit court erred in holding that Dakota Industries abandoned its state trademark by non-use.

*Decision*

*Summary Judgment Without Completion of Discovery*

[¶6.] At the summary judgment hearing, Dakota Industries argued that Cabela's had not complied with all requests for discovery, including answers to interrogatories and the production of documents. Although Dakota Industries has not identified the specific information it sought, Cabela's indicated (without objection) that the discovery was related to Cabela's sales rather than evidence relating to the summary judgment issue of Dakota Industries' alleged non-use of the trademark. Nevertheless, Dakota Industries argues that because this discovery

was not completed, summary judgment was premature. Dakota Industries relies on SDCL 15-6-56(f), which provides that a party opposing a motion for summary judgment is entitled to conduct discovery when necessary to oppose the motion. Under that rule, the facts sought through discovery must be "essential" to opposing the summary judgment:

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit *facts essential to justify his opposition*, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

SDCL 15-6-56(f) (emphasis added). "This requires a showing how further discovery will defeat the motion for summary judgment." Anderson v. Keller, 2007 SD 89, ¶31, 739 NW2d 35, 43 (Zinter, J., concurring) (citing 11 James Moore, *Moore's Federal Practice,* § 56.10[8][d] (3d ed 2006)).

[¶7.] In this case, Dakota Industries' affidavit in support of its opposition to summary judgment did not show how further discovery regarding Cabela's sales was essential to opposing Cabela's motion for summary judgment. Indeed, the discovery sought was not relevant and would not have assisted in defeating the motion. Evidence of Cabela's sales would become relevant only if Dakota Industries had not abandoned the trademark.

[¶8.] Further, Dakota Industries does not dispute Cabela's assertion that the outstanding discovery only related to Cabela's *nationwide* sales data, and Dakota Industries did not plead a cause of action for federal trademark infringement that would have related to nationwide sales. Dakota Industries only asserted infringement of its state registration. Therefore, as the circuit court noted,

any trademark infringement relief Dakota Industries could have obtained would have been limited to Cabela's sales in South Dakota.[1]  *See* Pinnacle Pizza Co., Inc. v. Little Caesar Enter., Inc., 560 FSupp2d 786, 802 (DSD 2008)(holding that the defendant was entitled to summary judgment on a claim under South Dakota trademark law "because South Dakota's trademark law, to the extent it was applicable to the conduct alleged by these claims, cannot extend to 'extraterritorial conduct'").  For this additional reason, Cabela's nationwide sales data was irrelevant to the issues in this case.

[¶9.]       We conclude that Dakota Industries' outstanding requests for discovery were irrelevant at the abandonment stage of the summary judgment proceeding.  Consequently, the circuit court did not err in considering the motion for summary judgment before the discovery was completed.

*Summary Judgment Burdens*

[¶10.]       Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law."  SDCL 15-6-56(c).  "All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party."  Hayes v. N. Hills Gen. Hosp., 1999 SD 28, ¶12, 590 NW2d 243, 247.  "The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law."  *Id*.

---

1.    Dakota Industries does not take issue with this ruling on appeal.  Therefore, we express no opinion on this ruling.

[¶11.] "While we often distinguish between the moving and non-moving party in referring to the parties' summary judgment burdens, the more precise inquiry looks to who will carry the burden of proof on the claim or defense at trial." Zephier v. Catholic Diocese of Sioux Falls, 2008 SD 56, ¶6, 752 NW2d 658, 662. "Entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id. See also* Bordeaux v. Shannon County Sch., 2005 SD 117, ¶14, 707 NW2d 123, 127 (stating, "those resisting summary judgment must show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof").

[¶12.] Dakota Industries argues that the circuit court erroneously placed the summary judgment burden of proof regarding abandonment on Dakota Industries. It points out that abandonment is an affirmative defense upon which Cabela's would carry the burden of proof at trial. We note, however, that Dakota Industries' argument fails to acknowledge the distinction between a moving party's initial summary judgment burden of proof and a non-moving party's responsive burden of production under SDCL 15-6-56(e).

[¶13.] The circuit court correctly placed the initial burden on Cabela's to establish a prima facie case of abandonment. Cabela's met their initial burden by producing Dakota Industries' business records, admissions, and stipulations. Dakota Industries' tax returns for the years 2001-2006 confirmed that no goods were sold and that Dakota Industries collected no royalties relating to products

bearing the DAKOTA designation. In his deposition, Dakota Industries' C.E.O., Donald P. Mackintosh, confirmed that Dakota Industries did not make or sell any goods bearing DAKOTA after 1997, and that the DAKOTA designation had not been used or licensed by Dakota Industries since 2000.

[¶14.]     This evidence, standing alone, was sufficient to create a prima facie case of abandonment: A prima facie case is established for summary judgment purposes when there "are facts in evidence which if unanswered would justify persons of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain." Fin-Ag, Inc. v. Pipestone Auction Livestock Market, Inc., 2008 SD, 48, ¶33, 754 NW2d 29, 43 (citation omitted). Because Cabela's met its initial burden of establishing a prima facie case of abandonment, the burden of production shifted to Dakota Industries to identify facts disputing or inferring that abandonment had not occurred. As Rule 56(e) provides:

> When a motion for summary judgment is made and supported as provided in § 15-6-56, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in § 15-6-56, *must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.*

SDCL 15-6-56(e)(emphasis added). *See also* Specialty Mills, Inc. v. Citizens State Bank, 1997 SD 7, ¶27, 558 NW2d 617, 625 (citing SDCL 15-6-56(e)).

[¶15.]     Because Dakota Industries established a prima facie case of abandonment, we conclude that the circuit court correctly imposed on Dakota Industries the responsive burden of identifying specific facts showing or inferring current use of the trademark. *See* SDCL 15-6-56(e); Peterson v. Spink Elec. Co-op.,

Inc., 1998 SD 60, ¶10 n3, 578 NW2d 589, 591 (providing that the party who opposes a motion for summary judgment "may not rest on the mere allegations . . . in his pleading.  He must present evidentiary matters showing that there is a genuine issue of material fact that is worth bringing to trial") (citation omitted).

*Abandonment by Non-Use*

[¶16.]        Dakota Industries finally argues that it met its burden of producing evidence of its actual use of the trademark.  SDCL 37-6-4(9) provides that a trademark is "used" if it "is placed in any manner on the goods or their containers or on the tags or labels affixed thereto and such goods are sold or otherwise distributed in this state."  The Secretary of State is authorized by SDCL 37-6-19(1) to cancel the registration of a trademark upon a court finding that the registered trademark has been abandoned.  SDCL ch 37-6, however, does not define the period of non-use necessary to constitute abandonment.

[¶17.]        After noting that our state statutes do not provide the period of non-use required for trademark abandonment, the circuit court considered abandonment under the Lanham Trademark Act.[2]  *See* St. Cloud v. Leapley, 521 NW2d 118, 122 (SD 1994) (providing this Court may "look to federal courts for guidance in interpretation of a state statute that is similar to a federal law").  Under the Lanham Trademark Act, a presumption of abandonment is created when a

---

2.      On appeal, Dakota Industries has not objected to the circuit court's consideration of the federal three-year presumptive period of non-use. Dakota Industries argues that the trademark was not abandoned under either a three-year or six-year period.

trademark has not been used for three consecutive years. 15 USC § 1127. Although it considered the Lanham Act, the circuit court did not adopt its three-year presumptive period for abandonment. The court considered Dakota Industries' almost six-year period of non-use. In its memorandum decision, the circuit court noted that Dakota Industries' C.E.O. admitted that Dakota Industries did not make or sell any goods bearing DAKOTA after 1997; and, that it had not collected royalties relating to the licensing of DAKOTA since 2001.

[¶18.]     Nevertheless, Dakota Industries argues that its licensees continue to sell DAKOTA garments. Dakota Industries points out that it produced evidence that it had "recently viewed garments bearing 'Dakota' for sale by Jake Freddie [a liquidator] in Sioux Falls[.]" Dakota Industries' counsel admitted, however, that it had sold those garments to Jake Freddie in 1997, and it had no evidence that Jake Freddie was still a licensee. Dakota Industries further failed to identify any other licensees that had been producing or selling DAKOTA garments,[3] and it offered no actual licensing agreements or affidavits from any licensee. Indeed, Dakota Industries' Statement of Disputed and Undisputed Facts in Opposition to Summary Judgment did not identify one specific licensee that had used the trademark, and its

---

3.     During the summary judgment hearing, counsel for Dakota Industries offered the name of a purported licensee, M. Fine & Sons, but the circuit court noted that *counsel's representation* was inconsistent with *testimony* from Mackintosh. Mackintosh's testimony was that M. Fine & Sons elected not to continue to use DAKOTA in 2000, and that Dakota Industries was unaware of any current use or even whether M. Fine & Sons remained in business.

brief on appeal contains no citations to the record disclosing any actual licensee using the trademark after 2001.[4]

[¶19.] Although Dakota Industries argues that it produced sufficient facts through affidavits and depositions stating that DAKOTA products were still "in the marketplace," our review of those documents reflects that those assertions about goods and licensees still in the marketplace are nothing but generalities, providing no specifics. As the circuit court observed, Dakota Industries failed in its burden of coming "forward with the information showing here's the income, here's the record of it, here's the license, here's the testimony of the licensees that shows that we're actively engaged in and we have not abandoned this [trade]mark."[5] It is telling

---

4. For example, although Dakota Industries alleges in its brief that it "has granted oral licenses not requiring the payment of royalties," this general allegation is unsupported by any reference to the record identifying one such licensee.

   This Court's appellate procedure regarding the appellant's brief requires that "[e]ach statement of a material fact *shall be* accompanied by a reference to the *record* where such fact appears." SDCL 15-26A-60(5) (emphasis added). "[T]he ultimate responsibility for presenting an adequate record on appeal falls on the appellant." *See* Baltodano v. N. Cent. Health Servs., Inc., 508 NW2d 892, 894 (SD 1993) (citation omitted).

5. Dakota Industries argues that it has not abandoned the trademark because it "has continued to supervise use of the trademark in the marketplace." *See* Oberlin v. Marlin Am. Corp., 596 F2d 1322, 1327 (7thCir 1979) (stating: "The Lanham Act requires supervision of trademark licensees at the expense of abandonment of the trademark."). *Oberlin* is, however, inapposite. The supervision language in *Oberlin* only related to the question whether supervision created an agency relationship between a franchisor and a franchisee. *Oberlin* did not consider what supervision is sufficient to preclude abandonment. Moreover, Dakota Industries' general allegation of supervision of "some licensees" is insufficient to satisfy its summary judgment burden of identifying *specific* facts reflecting that current licensees were using the trademark in South Dakota. SDCL 15-6-56 (e). Finally, as
   (continued . . .)

that in concluding there was no dispute of fact concerning actual use by licensees, the circuit court relied on the testimony of Dakota Industries' own CEO. In his deposition, Mackintosh conceded that although he was the company official responsible to determine whether licensees continued to use the trademark or even continued to exist, he testified that he was "not going to waste any time or efforts" making that determination.

[¶20.] We conclude that the circuit court correctly determined that Dakota Industries merely provided general allegations without setting forth sufficient specific facts to prevent summary judgment on the issue of abandonment. As the circuit court observed:

> Viewing the evidence in a light most favorable to Dakota Industries, it had a duty to present "specific facts showing that [a] genuine, material issue for trial exists." The [c]ourt cannot be asked to anticipate possible proof. "Unsupported conclusions and speculative statements do not raise a genuine issue of fact."

[¶21.] Affirmed.

[¶22.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, and SABERS, Retired Justice, concur.

---

(. . . continued)
previously noted, Dakota Industries' officer responsible for such supervision admitted that he was not going to "waste any time" detailing such supervision. *Infra* ¶19.