#30161-aff in pt & rev in pt-SRJ
**2024 S.D. 39**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

THE ESTATE OF ARTHUR OLSEN and
ANNETTE OLSEN, and PHEASANT
PHUN, INC.,                                    Plaintiffs and Appellants,

v.

AGTEGRA COOPERATIVE, as successor
of NORTH CENTRAL FARMERS
ELEVATOR and SOUTH DAKOTA WHEAT
GROWERS ASSOCIATION and/or NCFE
AIR HURON, LLC, and HEATH
KRETSCHMAR,                                    Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
SPINK COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE TONY L. PORTRA
Judge

\* \* \* \*

JOEL A. ARENDS
Sioux Falls, South Dakota                      Attorney for plaintiffs and
                                               appellants.


\* \* \* \*

                                               CONSIDERED ON BRIEFS
                                               AUGUST 29, 2023
                                               OPINION FILED **07/10/24**

\* \* \* \*

JOSHUA K. FINER of
Richardson, Wyly, Wise
    Sauck & Hieb, LLP
Aberdeen, South Dakota

Attorneys for defendants and
appellees Agtegra.


SCOTT A. HINDMAN of
Mayne, Hindman, Parry & Wingert
Sioux City, Iowa

Attorneys for defendants and
appellees North Central
Farmers Elevator.


JOEL E. ENGEL III of
Woods, Fuller, Shultz & Smith, P.C.
Sioux Falls, South Dakota

Attorneys for defendants and
appellees NCFE Air Huron and
Heath Kretschmar.

#30161

JENSEN, Chief Justice

[¶1.] Arthur and Annette Olsen (Olsens) maintained a 20-acre strip of ponderosa pine trees on their farm. On October 20, 2014, while guiding a hunting party on the Olsens' property, the Olsens' son, David, claimed a crop duster airplane sprayed herbicide onto those in the party and the trees. The Olsens filed this action alleging the herbicide had damaged the trees. The Defendants filed a motion for summary judgment, arguing that expert testimony was required to show causation for any alleged damage to the trees from the herbicide. The circuit court granted the Defendants' motion in its entirety. The Olsens appeal. We affirm in part, reverse in part, and remand.

## Factual and Procedural Background

[¶2.] In 1960, Arthur planted 18,000 non-native ponderosa pine trees on the Olsens' farm in Spink County, South Dakota. Of those 18,000 trees, fewer than 1,000 eventually took root and grew. By October 2014, approximately 480 trees remained.

[¶3.] The Olsens claim that in October 2014, a crop duster airplane operated by the Defendants was applying ForeFront HL herbicide to a nearby field and caused the herbicide to be sprayed onto the Olsens' trees. The first amended complaint alleges that the hunters on the Olsens' property "felt the chemical spray land on their persons" and "smelled the chemical on their persons and could taste the chemical in their mouths." The Olsens claim that the herbicide caused significant damage and death to the trees.

[¶4.] Approximately one month later, Arthur, along with Shawn Thelen, an agronomist then working for Defendant North Central Farmers Elevator (NCFE), and Dr. John Ball, a forestry specialist from South Dakota State University, inspected the ponderosa pine trees. Thelen confirmed that ForeFront HL was the chemical sprayed by the crop duster and that NCFE had provided the chemical. The trees showed no visible evidence of damage from the chemical spray at that time. The Olsens' complaint alleged that Thelen asked the parties to wait until the spring of 2015 "to allow the trees to grow back if possible so that they could tell what trees would grow back versus which ones would die because of the [ForeFront HL] spraying." They further alleged that Thelen stated that NCFE "would make it right" in response to the Olsens' request to repair any damage done to the trees.[1]

[¶5.] On October 28, 2015, the Olsens retained Sam Kezar of Aspen Arboriculture Solutions to inspect the trees and provide (1) an opinion of the value of the trees and (2) an "independent, objective expert opinion into the potential cause(s) of death to the trees in question." Kezar inspected the trees on December 10, 2015, and submitted a report based upon his inspection. Kezar provided his opinion on the value of the trees. But on the question of causation, Kezar stated that "[n]o opinions or assumptions pertaining to the cause of the trees' death are within this report, nor are intended."

[¶6.] The Olsens alleged five counts in their complaint—trespass, statutory nuisance, common law nuisance, civil conspiracy, and promissory estoppel. The Olsens amended their complaint and filed an expert witness disclosure. They

---

1. Thelen passed away in 2017.

named Kezar, anticipated to provide opinions consistent with his report; Brad Johnson, a certified general real property appraiser; and their son, David. No opinions or reports were provided from the latter two designated expert witnesses.

[¶7.] Defendants NCFE, Air Huron, LLC, and Heath Kretschmar filed a motion for summary judgment arguing that the Olsens failed to identify an expert to testify as to causation of the damages to the trees—the only damages claimed in the case. The remaining Defendants later joined this motion. The Defendants offered the transcript of Annette's May 4, 2022 deposition and Kezar's report in support of the motion. Annette's deposition was presented to support the Defendants' claim that any damage to the trees was due to other causes, including a June 2013 storm event.

[¶8.] In her testimony, Annette described a "horrific storm" that brought large hail, which punctured the steel roof of the hunting lodge on the Olsens' property, along with ten inches of rain. The storm stripped the surrounding crops and vegetation on the property, leaving everything black. The Olsens' nearby farmhouse was demolished as a total loss, and the hunting lodge underwent substantial repair because of the June 2013 storm. Annette testified that any damage to the trees was not considered at this time because the Olsens prioritized the restoration of their home and their claim of several years of lost income to the hunting business because of the impact of the storm.

[¶9.] The Olsens filed a brief resisting the Defendants' summary judgment motion and a reply to the Defendants' statement of undisputed material facts. In their brief, the Olsens asserted that expert testimony was unnecessary to prove

causation and there were genuine issues of material facts in dispute precluding summary judgment. However, the Olsens failed to submit any affidavits or other evidence and relied solely on allegations and attachments in their first amended complaint. Further, in responding to the Defendants' statement of undisputed material facts, the Olsens did not deny the facts submitted by the Defendants.[2]

[¶10.] Following a hearing on the summary judgment motion, the circuit court determined that a jury "would be left to speculate about the cause of the damage to Plaintiff's trees" without expert testimony. The court reasoned that the facts of the case implicated the fields of chemistry, botany, and agronomy—areas beyond typical layperson understanding—and a jury's decision required expert testimony as to the proximate cause of the damages to the trees. The court entered a corresponding order granting the motion for summary judgment, dismissing with prejudice the Olsens' complaint *in its entirety*.

[¶11.] The Olsens appeal and raise the single issue of whether the circuit court erred in granting the motion for summary judgment.

## Standard of Review

[¶12.] "We review a circuit court's entry of summary judgment under the de novo standard of review." *Harvieux v. Progressive N. Ins. Co.*, 2018 S.D. 52, ¶ 9, 915 N.W.2d 697, 700 (citation omitted). Our rules for reviewing the entry "of summary judgment under SDCL 15-6-56(c) [are] well settled." *Garrido v. Team Auto Sales,*

---

2. The Olsens responded that many of the facts were "immaterial to any claim or defense in this case" and offered additional information from the unsworn pleadings in response to several facts, but they "otherwise admit[ted]" all facts contained in the Defendants' statement of undisputed material facts.

*Inc.*, 2018 S.D. 41, ¶ 15, 913 N.W.2d 95, 100 (quoting *McKie Ford Lincoln, Inc. v. Hanna*, 2018 S.D. 14, ¶ 8, 907 N.W.2d 795, 798).

> Summary judgment is proper where, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We will affirm only when no genuine issues of material fact exist and the law was applied correctly. We make all reasonable inferences drawn from the facts in the light most favorable to the non-moving party. In addition, the moving party has the burden of clearly demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Id.* (quoting *McKie Ford Lincoln, Inc.*, 2018 S.D. 14, ¶ 8, 907 N.W.2d at 798).

## Analysis

### *Entry of summary judgment as to causation*

[¶13.] The Olsens claim that the circuit court erred in granting summary judgment because expert testimony is not required in this case and that they have presented sufficient facts to show causation. They cite authority from a South Dakota federal district court as support. *See Krasniqi v. Holdahl, Inc.*, No. 4:20-CV-04090-KES, 2022 WL 612660, at *3–4 (D.S.D. Mar. 2, 2022) (holding that whether expert testimony is required depends on the facts of each case and that it was not required to establish an ordinary standard of care). The Olsens also argue that summary judgment was inappropriate because proof of damages is not an element essential for the claims of trespass or nuisance.

[¶14.] The Defendants counter that the circuit court properly granted summary judgment on all the claims because the Olsens failed to present evidence creating a genuine issue of material fact that the damage to the trees was caused by

the chemical spray event and failed to allege any other damages. The Defendants claim that the Olsens were required to present expert testimony to establish that the chemical allegedly sprayed on the trees was the proximate cause of the damage claimed. The Defendants rely on *Cooper v. Brownell*, in which this Court held that the circuit court did not err in determining that expert testimony was required to show causation for claims of bodily injury when there were multiple past injuries to the same parts of the plaintiff's body. 2019 S.D. 10, ¶ 17, 923 N.W.2d 821, 825.

[¶15.]      In moving for summary judgment, the Defendants argued that the Olsens could not establish causation for the damage to the ponderosa pine trees without expert testimony. The Defendants relied on Kezar's report stating that he was tasked by the Olsens with determining causation for the damage to the trees but was unable to provide any "opinions or assumptions pertaining to the cause of the trees' death[.]" The Defendants also presented evidence showing that, upon inspection in November 2014, there was no visible damage to the trees from the October 2014 spraying event. Additionally, the Defendants presented evidence of other plausible causes for any alleged damage to the trees, including: a severe storm in 2013; a showing that ponderosa pine trees are not native to eastern South Dakota; that the soil type on the Olsens' farm was not conducive to growing ponderosa pine trees; that many of the trees did not flourish because of lack of moisture; and that most of the trees had already died prior to 2014.

[¶16.]      In responding to the motion for summary judgment, the Olsens did not present any expert opinions or other evidence to show causation for damage to the trees from the chemical spray incident. Instead, the Olsens relied upon allegations

in their first amended complaint and argued that they did not need to present expert testimony on causation.

[¶17.] "When a motion for summary judgment is made and supported as provided in § 15-6-56, an adverse party may not rest upon the mere allegations or denials of his pleading[.]" SDCL 15-6-56(e). The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Sheard v. Hattum*, 2021 S.D. 55, ¶ 28, 965 N.W.2d 134, 143 (citation omitted). "It is well settled that '[w]hen challenging a summary judgment, the nonmoving party must substantiate [their] allegations with sufficient probative evidence that would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Hanson v. Big Stone Therapies, Inc.*, 2018 S.D. 60, ¶ 29, 916 N.W.2d 151, 159 (alterations in original) (citation omitted).

[¶18.] On the question of causation, "to successfully resist summary judgment, [a party is] required to provide 'an evidentiary basis' for [causation]." *Nationwide Mut. Ins. Co. v. Barton Solvents, Inc.*, 2014 S.D. 70, ¶ 17, 855 N.W.2d 145, 151 (citing *Burley v. Kytec Innovative Sports Equip., Inc.*, 2007 S.D. 82, ¶ 32, 737 N.W.2d 397, 409). "Proof of causation is an element essential to [a plaintiff's] case. Therefore, [a plaintiff cannot] 'rest upon the mere allegations' in his pleadings." *Cooper*, 2019 S.D. 10, ¶ 16, 923 N.W.2d at 825 (citing SDCL 15-6-56(e)).

[¶19.] "[E]xpert testimony is required when the issue [of causation] falls outside the common experience of a jury." *Burley*, 2007 S.D. 82, ¶ 29, 737 N.W.2d at 407 (citing *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 362 (S.D. 1992)).

"Expert testimony is generally necessary to establish elements of negligence" in a products liability action "unless it is patently obvious" that a product defect was the proximate cause of alleged damages. *Nationwide Mut. Ins. Co.*, 2014 S.D. 70, ¶ 17, 855 N.W.2d at 151. Expert testimony is necessary to prove causation for damages in circumstances where "conclud[ing] otherwise would effectively allow the jury to speculate on an unguided determination of causation[.]" *Cooper*, 2019 S.D. 10, ¶ 17, 923 N.W.2d at 825.

[¶20.] Here, the circuit court's decision to grant summary judgment could be sustained on two bases—a failure of proof and the absence of an expert. First, the Olsens have simply not submitted any evidence to show which trees, if any, were sprayed with herbicide. There was some evidence, as we note below, that areas of the Olsens' land were sprayed, but there are no affidavits, depositions, or other evidence showing which trees, if any, were sprayed.

[¶21.] No evidence, expert or otherwise, was presented concerning the amount of herbicide the trees were exposed to, the likelihood that the ForeFront HL would have damaged or killed the trees, or that any of the trees had died as a result of exposure to the herbicide.[3] The inability of the Olsens' own expert to provide an

---

3. In their brief, the Olsens argue that the product label cautions against using ForeFront HL around ponderosa pine trees. Moreover, the label attached to the first amended complaint simply states that caution should be used when applying the product next to certain trees, including ponderosa pine, and that the chemical may "curl the leaves of trees" but would be unlikely to kill mature trees. The label also provides different warnings depending on the concentration of the herbicide, but the record fails to show the amount of herbicide used or the amount of herbicide the trees were exposed to. *See Uhler v. Graham Grp., Inc.*, 992 N.W.2d 577, 581 (Iowa 2023) ("A safety data sheet alone isn't sufficient to establish causation in a toxic tort case because

(continued . . .)

opinion on causation only underscores that a jury could not be expected to reach a determination on causation without resorting to speculation.

[¶22.]     Annette acknowledged in her deposition that there was no visible damage to the trees from the spray incident when the trees were inspected approximately one month after the event.  In his report, Kezar referenced that when he inspected the trees in 2015, some trees were dead, while others were healthy, but he rendered no opinion whether this damage was caused by the spray, or whether the condition of the trees had changed after the 2014 alleged herbicide exposure.  Since there was no evidence that the condition of the trees Kezar observed in 2015 was any different than their condition prior to the spray incident in October 2014, Kezar's observations were meaningless in the absence of an opinion on the cause of the damage to the trees.  The mere recitation that some of the trees were dead is not "sufficient probative evidence [to] permit a finding in [their] favor on more than mere speculation [or] conjecture[.]" *Hanson*, 2018 S.D. 60, ¶ 29, 916 N.W.2d at 159 (second alteration in original) (citation omitted).

[¶23.]     Even if the record could support an inference that the trees were exposed to herbicide, the circuit court's decision to grant summary judgment is equally sustainable on the basis that the Olsens lack expert testimony to support the claim that the trees died as a result.  The issue of causation here involves the interaction of a chemical agent on a living plant organism, and we have little

---

(. . . continued)
> the sheets aren't evidence of what a toxic level of exposure might be, whether a particular person was exposed to a toxic dosage, or whether the person's exposure actually caused her injuries.").

difficulty holding that this is an area "beyond usual and ordinary experiences" of a lay jury. *Cooper*, 2019 S.D. 10, ¶ 13, 923 N.W.2d at 824 (citing *Hanson*, 2018 S.D. 60, ¶ 34, 916 N.W.2d at 160). Consequently, expert evidence is necessary to establish causation.

[¶24.]     Other courts have also held that expert testimony is necessary to present a submissible case of causation when a jury is left to speculate from other evidence whether herbicide may have caused damage to trees. In an action for damage to evergreen trees from an aerial spraying of the chemical 2,4-D, the Iowa Supreme Court held that the evidence presented, including expert testimony that did not provide an opinion that 2,4-D was the cause of the damage to the trees in question, was insufficient to permit the case to be submitted to a jury. *Burton v. Theobold*, 216 N.W.2d 299, 300 (Iowa 1974). In that case, an expert provided testimony that 2,4-D might sometimes kill trees but declined to provide a causation opinion as to whether it damaged the trees in question. *Id.* at 300–01. The court determined that "the damage claimed here requires some expert testimony to establish the properties and effects of 2,4-D. It is not the type of damage which an ordinary juror might determine without such help." *Id.* at 300; *see also Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 79 (Tex. 2023) (explaining the requirement for causation that a plaintiff establish the contaminant dosage that would be expected to produce injury to trees).

[¶25.]     For these reasons, the circuit court properly granted summary judgment with regard to the causation for damages to the trees.

*Disposition of underlying claims*

[¶26.]    The Olsens' complaint alleged claims for trespass, statutory nuisance, common law nuisance, civil conspiracy, and promissory estoppel. Civil conspiracy and promissory estoppel each require a showing of damage or economic loss to survive summary judgment.[4] Because the Olsens did not resist summary judgment with specific facts showing a genuine issue for trial on the question of causation of damages, the circuit court properly granted summary judgment on the claims for civil conspiracy and promissory estoppel.

[¶27.]    The remaining claims—trespass, statutory nuisance, and common law nuisance—do not require a showing of damages to survive summary judgment. Our decisional law specifically excludes damages as a necessary element for a prima facie case of civil trespass:

> One who intentionally and without a consensual or other privilege
> (a) enters land in possession of another or any part thereof or causes a thing or third person to do so, or
> (b) remains thereon is liable as a trespasser to the other *irrespective of whether harm is thereby caused* to any of his legally protected interests.

*Zwart v. Penning*, 2018 S.D. 40, ¶ 21, 912 N.W.2d 833, 839–40 (emphasis added) (quoting *Benson v. State*, 2006 S.D. 8, ¶ 74, 710 N.W.2d 131, 159).

---

4.    "To establish a *prima facie* case of civil conspiracy, the plaintiff must show . . . damages as the proximate result of the conspiracy." *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 59, 758 N.W.2d 436, 455 (citation omitted). Likewise, promissory estoppel requires that "the detriment suffered in reliance must be substantial in an economic sense[.]" *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 848 (S.D. 1990) (citing *Minor v. Sully Buttes Sch. Dist. No. 58–2*, 345 N.W.2d 48, 51 (S.D. 1984)).

[¶28.]     Claims for statutory or common law nuisance also do not require a showing of damage as a necessary element of the claims. SDCL 21-10-1 provides:

> A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
>     (1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;
>     (2) Offends decency;
>     (3) Unlawfully interferes with, obstructs, or tends to obstruct, or renders dangerous for passage, any lake or navigable river, bay, stream, canal, or basin, or any public park, square, street, or highway;
>     (4) In any way renders other persons insecure in life, or in the use of property.

[¶29.]     Similarly, we have adopted the elements of common law nuisance set out by the Restatement (Second) of Torts § 822 (1979), which is also silent on damages as a necessary element:

> One is subject to liability for a private nuisance if, but only if, his conduct is the legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>     (a) intentional and unreasonable, or
>     (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*Atkinson v. City of Pierre*, 2005 S.D. 114, ¶ 13, 706 N.W.2d 791, 796 (quoting Restatement (Second) of Torts § 822 (1979)); *see also Collins v. Barker*, 2003 S.D. 100, ¶ 17, 668 N.W.2d 548, 554 (same); *Kuper v. Lincoln-Union Elec. Co.*, 1996 S.D. 145, ¶ 49, 557 N.W.2d 748, 761 (same).

[¶30.]     "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.'" *Dakota Indus., Inc. v. Cabela's.Com, Inc.*,

2009 S.D. 39, ¶ 10, 766 N.W.2d 510, 513 (quoting SDCL 15-6-56(c) (Rule 56)). Rule 56 places the initial burden "on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." *Id.* (citation omitted). However, "those resisting summary judgment must show that they will be able to place sufficient evidence in the record at trial to support findings on all the elements on which they have the burden of proof." *Id.* ¶ 11, 766 N.W.2d at 513 (quoting *Bordeaux v. Shannon Cnty. Sch.*, 2005 S.D. 117, ¶ 14, 707 N.W.2d 123, 127).

[¶31.]     While the facts are not well-developed in this record, Annette claimed in her deposition that the Olsens' property and the hunting party on their property were sprayed by the crop duster. In moving for summary judgment, the Defendants did not challenge this claim, and there appears to be no real dispute that the Defendants caused the chemical spray to enter the Olsens' property without consent. *See Zwart*, 2018 S.D. 40, ¶ 21, 912 N.W.2d at 839–40 (listing elements of civil trespass where crux of trespass is the entry of the land rather than any harm caused thereby). Based upon this intrusion, a reasonable jury also could determine this act "[a]nnoy[ed], injure[d], or endanger[ed] the comfort, repose, health, or safety of others . . . [or] render[ed] other persons insecure . . . in the use of property." SDCL 21-10-1. Further, a reasonable jury could determine that such an act was an illegal "invasion of another's interest in the private use and enjoyment of land" either intentionally or unintentionally. *Atkinson*, 2005 S.D. 114, ¶ 13, 706 N.W.2d at 796 (quoting Restatement (Second) of Torts § 822 (1979)).

[¶32.] Accordingly, the circuit court erred in granting summary judgment on the Olsens' trespass, statutory nuisance, and common law nuisance claims. However, because the Olsens have failed to present evidence as to causation for the claimed damages, any compensatory damages under these theories may be limited to nominal damages. *See Hoffman v. Bob Law, Inc.*, 2016 S.D. 94, ¶ 20, 888 N.W.2d 569, 577 (holding in a claim for trespass arising from an adjoining landowner's encroachment that an award of nominal damages was not erroneous when a party failed to introduce credible evidence of damages).

[¶33.] We affirm the circuit court's grant of the motion for summary judgment on the question of damages to the Olsens' trees. We also affirm the circuit court's grant of the motion for summary judgment on the claims of promissory estoppel and civil conspiracy. We reverse the circuit court's entry of summary judgment on the claims of trespass, statutory nuisance, and common law nuisance and remand for further proceedings consistent with this opinion.

[¶34.] SALTER and MYREN, Justices, concur.

[¶35.] KERN and DEVANEY, Justices, concur in part and dissent in part.

KERN, Justice (concurring in part and dissenting in part).

[¶36.] I concur only in the majority opinion's determination that the circuit court erred in granting summary judgment on the Olsens' claims for trespass, statutory nuisance, and common law nuisance. The majority opinion thereafter wrongly asserts that any compensatory damages for these claims are limited to an award of nominal damages citing *Hoffman v. Bob Law, Inc.*, 2016 S.D. 94, ¶ 20, 888 N.W.2d 569, 577, a case which is readily distinguishable. There, in an

encroachment action, the Court upheld an award of nominal damages due to the lack of "any credible evidence of damages." *Id.* at 577. Here, such a determination is premature at the summary judgment stage, particularly given the evidence of damages discussed below.

[¶37.] Moreover, I respectfully dissent from the majority opinion's holding that summary judgment was appropriate on the Olsens' claim for damage to their trees. Parties resisting summary judgment are not required to "establish and prove every element" of their claim(s). *Stern Oil Co., Inc. v. Brown*, 2012 S.D. 56, ¶ 16, 817 N.W.2d 395, 401. However, the majority opinion concludes that—in addition to an alleged failure of proof in resisting summary judgment—the Olsens should have presented expert testimony establishing that ForeFront HL caused the damage to their unique grove of ponderosa pines. Such a result goes beyond our current jurisprudence, importing questionable precedent from other jurisdictions. The majority opinion also neglects substantial direct and circumstantial evidence that, at the very least, renders summary judgment inappropriate.

[¶38.] "[S]ummary judgment is an extreme remedy and should be awarded only when the truth is clear and reasonable doubts touching upon the existence of a genuine issue of material fact should be resolved against the movant." *Tibke v. McDougall*, 479 N.W.2d 898, 904 (S.D. 1992). Furthermore, "the movant has the burden of proof to clearly show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *Id.* "[S]ummary judgment is not a substitute for trial; a belief that the non-moving party will not prevail at trial is not an appropriate basis for granting the motion on issues not shown to be a sham,

frivolous or unsubstantiated." *Godbe v. City of Rapid City*, 2022 S.D. 1, ¶ 20, 969 N.W.2d 208, 213 (alteration in original).

[¶39.]     The majority opinion notes that the Olsens "failed to submit any affidavits or other evidence and relied solely on allegations and attachments in their first amended complaint." However, courts may consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" when evaluating a motion for summary judgment. SDCL 15-6-56(c). In addition, the Defendants' attorney submitted an affidavit on July 7, 2022, containing Annette Olsen's May 4, 2022 deposition transcript, a copy of Sam Kezar's expert report on the ponderosa pines, and accompanying photographs.[5] This Court and the circuit court, in evaluating summary judgment, should consider the pleadings and evidence presented in the Defendants' affidavit and the Olsens' first amended complaint.

[¶40.]     The majority opinion first argues that summary judgment is appropriate because "the Olsens have simply not submitted any evidence to show which trees, if any, were sprayed with herbicide." According to the majority, although "[t]here was some evidence . . . that areas of the Olsens' land were sprayed[,] . . . there are no affidavits, depositions, or other evidence showing which trees, if any, were sprayed." This statement is simply inaccurate and contrary to the record.

---

5.     The evidence in this affidavit was referenced by both parties at the summary judgment hearing.

[¶41.]     In October 2014, David Olsen, the son of Arthur and Annette Olsen, witnessed the Defendants' crop duster spraying the ponderosas with ForeFront HL herbicide. He was guiding pheasant hunters around the property when the crop duster released its spray dousing them all with the ForeFront HL spray.[6] ForeFront HL is a herbicide and its label specifically warns that it "can cause injury or death to desirable vegetation."[7] Accordingly, "[u]sers are advised not to apply [ForeFront HL] over the top of desirable trees or in the root zone of susceptible species where injury cannot be tolerated." The label specifically identifies ponderosa pines as a susceptible species.

[¶42.]     Shortly after the spraying incident, an agronomist employed by North Central Farmers Elevator (NCFE), one of the Defendants, surveyed the trees with David. As no immediate damage was apparent, the NCFE employee requested that the parties postpone any action until spring 2015 to see if any of the trees would survive. The employee also assured David that NCFE "would make it right" if the trees ultimately exhibited damage from the spraying. Nevertheless, when all of the ponderosa pines in the north half of the Olsens' property died by 2015, NCFE refused to compensate the Olsens. An aerial photo of the trees, referenced during

---

6.     David and his hunting party hurried back to the lodge to shower, spray down their dogs and wash their gear and clothing to remove the herbicide released from the plane.

7.     This label was included in the Olsens' first amended complaint and substantively referenced by both parties at the summary judgment hearing. A court is entitled to consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in evaluating a motion for summary judgment. SDCL 15-6-56(c).

the summary judgment hearing, demonstrates that the dead trees mirror the crop duster's spray pattern.

[¶43.]      In the fall of 2015, an expert was retained by the Defendants to appraise the damaged trees and to assess the cause of their death.  Presumably due to the substantial lapse in time since the spraying—caused by the Olsens' good faith reliance on NCFE's assurances—the expert was unable to conclusively establish a cause.  However, the expert made key observations from which a jury could reasonably find causation without resorting to mere speculation.  Notably, out of the 480 ponderosa pine trees, the expert observed 380 dead trees and another 80 with 50% or greater sudden canopy loss/damage.  According to the expert, "the growth intervals on the trees, up until death, [were] normal and healthy."  The remaining undamaged trees "were healthy, with normal growth and no signs of pest or disease problems."  Although the expert noted that not all of the ponderosas survived the initial planting, "those that did establish after the planting were healthy and not dying prior to the damage."  In other words, the grove of otherwise healthy ponderosas experienced a sudden adverse event that resulted in damage and death.

[¶44.]      Viewed in totality, these facts are more than sufficient for a trier of fact to conclude that the Olsens' ponderosas were indeed sprayed with and damaged by the ForeFront HL.  David witnessed the spraying of these trees.  The ForeFront HL label specifically warns that it can cause damage or death when sprayed on the

canopy of susceptible species such as ponderosa pines.[8] This very result occurred as the Olsens' ponderosas died over the months following the spraying, creating a blighted area matching the spray pattern. The majority steps over these facts to proclaim that there is "no . . . evidence . . . that the trees were sprayed." Nevertheless, a thorough review of the record before us reveals that summary judgment is inappropriate because a reasonable jury could determine that the ForeFront HL did indeed kill the trees.

[¶45.] To hedge against this inevitable conclusion, the majority opinion alternatively argues that "[e]ven if the record could support an inference that the trees were exposed to herbicide, the circuit court's decision to grant summary judgment is equally sustainable on the basis that the Olsens lack expert testimony to support the claim that the trees died as a result." The majority opinion correctly notes that, to avoid summary judgment, "expert testimony is required when the issue falls outside the common experience of a jury." *Burley v. Kytec Innovative Sports Equip.*, 2007 S.D. 82, ¶ 29, 737 N.W.2d 397, 407 (citing *Caldwell v. John*

---

8. Rather than properly applying the summary judgment standard and viewing the evidence in a light most favorable to the Olsens, the majority opinion looks for ways to discredit this clear warning. It cites *Uhler v. Graham Grp., Inc.*, 992 N.W.2d 577, 581 (Iowa 2023) for its determination that "[a] safety data sheet alone" is insufficient to establish causation because of a lack of evidence regarding the level of exposure and whether there was in fact exposure to a toxic dosage. However, not only is the fact of exposure supported by evidence produced by the Olsens, but the usage warning for the ForeFront HL is not confined to a specific rate of application, especially when applying it over the top of the tree canopy as opposed to applying it to the soil or weeds under the canopy. The ForeFront HL guidelines for use emphasize that it "should **NOT** be used over-the-top of desirable trees" and "can be used **ONLY** as a directed spray under the canopy, or within the drip line of certain trees[,]" one of which is the ponderosa pine.

*Morrell & Co.*, 489 N.W.2d 353 (S.D. 1992)). For example, in the context of negligence, "when the causal connection between the injury and accident is beyond usual and ordinary experiences, expert testimony is required to establish causation." *Cooper v. Brownell*, 2019 S.D. 10, ¶ 13, 923 N.W.2d 821, 824. In *Cooper*, the plaintiff had preexisting injuries that made it difficult to identify which damages were caused by the accident at issue. *Id.* ¶ 14, 923 N.W.2d at 824–25. Thus, by not proffering expert testimony to differentiate between the injuries, the plaintiff failed "to make a showing sufficient to establish the existence of an element essential to that party's case" and summary judgment was appropriate. *Id.* ¶ 15, 923 N.W.2d at 825.

[¶46.] But such a need for an expert is not present here. Unlike *Cooper*, expert testimony is not required to differentiate between numerous past and present injuries to the trees and their potential causes. Rather, there is only one injury and, given the highly suggestive surrounding facts detailed above, determining causation is not beyond the "usual and ordinary experiences" of a jury. *Id.* ¶ 13, 923 N.W.2d at 824. Indeed, the Defendants' proposed alternative causes of the damage are highly implausible.

[¶47.] First, at the summary judgment hearing, the Defendants suggested that, because ponderosa pines were not native to the area, the grove was "in rough shape" as it struggled to adapt to the environment. Although some of the ponderosas died after planting, the Olsens' expert specifically noted that, prior to the sudden damage, the ponderosas were "normal and healthy" and *had been established for over 50 years*. Quite simply, these trees were healthy and

flourishing, not in distress. On summary judgment, where such conflicting assertions are presented, "[a]ll reasonable inferences drawn from the facts must be viewed in favor of the non-moving party." *Stern Oil*, 2012 S.D. 56, ¶ 8, 817 N.W.2d at 398.

[¶48.]    Secondly, the Defendants argued that a terrible storm in 2013 damaged the ponderosas, causing their decline and eventual death. However, this ignores Annette's deposition testimony that she had observed new growth on the ponderosas in the summer of 2014. It also appears to contradict Defendant Agtegra's brief on appeal, which admits that "[t]here was no visible damage to the trees after the alleged spraying incident in 2014."[9] To accept the Defendants' argument that the trees were fatally injured by a storm in 2013, we would have to ignore the fact that they somehow recovered to such a degree that they were still growing and showing *no damage* in 2014 but yet mysteriously died in 2015. Such difficulty finding a plausible alternative cause of the ponderosas' damage and death provides support for the Olsens' causation argument and weighs heavily against summary judgment.

[¶49.]    In order to avoid this logical conclusion, the majority opinion relies on precedent from other jurisdictions, most notably *Burton v. Theobold*, a 1974 decision from the Iowa Supreme Court. 216 N.W.2d 299, 300 (Iowa 1974). In that case, an

---

9.    The majority opinion continues to misstate the record by suggesting that "there was no evidence that the condition of the trees Kezar observed in 2015 was any different than their condition prior to the spray incident in October 2014[.]" To the contrary, both parties agree that, immediately after the spraying, the ponderosa pines did not exhibit signs of damage. However, when Kezar observed these trees in 2015, they exhibited extensive damage.

expert stated that while "2,4–D might sometimes kill trees," he could not offer an opinion as to whether the herbicide had killed the trees in question. *Id.* at 301. According to the Iowa Supreme Court, given that the trees were healthy before the mistaken spraying, "expert testimony that the damage 'might have' or 'could have' resulted from the spray" would have raised a question for the jury. *Id.* But why should such formalism be necessary to survive summary judgment when a chemical known to cause harm to ponderosa pines is applied and harm results?[10]

[¶50.] Nevertheless, irrespective of any jurisprudential shortcomings, *Burton* is inapposite. There, the plaintiff alleged damages because healthy trees died several months after being sprayed with 2,4-D. *Id.* Here, there are several

---

10. The heightened showing of causation in toxic tort cases proposed by the majority opinion may very well be necessary to prevail at trial. But, as stated previously, "a belief that the non-moving party will not prevail at trial is not an appropriate basis for granting the motion on issues not shown to be a sham, frivolous or unsubstantiated." *Godbe*, 2022 S.D. 1, ¶ 20, 969 N.W.2d at 213. Holding that causation in toxic tort cases must be proved as a matter of law to survive summary judgment would unnecessarily burden plaintiffs and undermine the limited role of summary judgment itself, especially in cases like the Olsens' where strong circumstantial and direct evidence exists to establish causation at this stage of the proceedings. Notably, in *Hanson v. Big Stone Therapies, Inc.*, one of the cases the majority opinion relies upon, this Court found that, despite the lack of an expert opinion as to *causation* of the plaintiff's fractured femur, the jury could reasonably infer from the other circumstantial evidence that her injury was caused by the alleged deviation from the standard of care that occurred in one of her physical therapy sessions. 2018 S.D. 60, ¶ 39, 916 N.W.2d 151, 161. Such evidence included the plaintiff's testimony regarding the circumstances and timing of when she first experienced the pain and the undisputed fact that her femur showed no signs of fracture prior to this session. *Id.* So too here, the evidence showing the Defendants' deviation from the undisputed guidelines for spraying the chemical at issue, the testimony regarding the timing of the spraying, and the observations of Annette and Kezar regarding the condition of the trees before and after they were sprayed should have been deemed sufficient to preclude summary judgment in the Defendants' favor.

additional corroborating facts.  The ForeFront HL label warns that ponderosa pines are uniquely sensitive to and can be killed by this particular herbicide.  The dead trees outline an area consistent with the alleged spray pattern.  David was present by the ponderosa grove during the spraying, which was so thick that he "smelled the chemical on [his] person[] and could taste the chemical in [his] mouth."  In addition, the Defendants were unable to propose a plausible alternative theory of causation.  When all signs point in the same direction, one hardly needs an expert navigator.

[¶51.]     The matter of the Olsens' ponderosas is a question for the jury as sufficient factual allegations and evidence have been proffered to survive summary judgment.  For the foregoing reasons, I respectfully dissent.

[¶52.]     DEVANEY, Justice, joins this writing.